Epperson v. Robertson.

# EPPERSON v. ROBERTSON.

## (*Jackson.* April 22, 1892.)

1. BANKRUPTCY. *Assignee's rights. Attached property.*

An assignee in bankruptcy takes the bankrupt's property subject to all equities, liens, powers, and incumbrances existing against it at commencement of the bankruptcy proceedings, except so far as these are defeated or modified by express provisions of the bankrupt Act. Attachment of the bankrupt's property "on mesne process, * * * made within four months next preceding the commencement of the bankruptcy proceedings," is dissolved by express provisions of the bankrupt Act.

Act construed: U. S. Rev. Stat., § 5044.

Cases cited: 95 U. S., 764; 101 U. S., 731; 104 U. S., 232.

2. SAME. *Lien not dependent on mesne process, when.*

Bankrupt's creditor, without judgment at law, filed bill "within four months next preceding the commencement of the bankruptcy proceedings" to set aside fraudulent conveyance of bankrupt's realty, and subject same to payment of his debt. The bill prayed for attachment, which was issued and levied upon the lands therein described. These lands passed to the assignee in bankruptcy, and were sold by him.

*Held:* The bankrupt's creditor had secured lien on these lands by the filing of his bill, and independently of the levy of the attachment, and that this lien was not dependent on mesne process, and therefore not defeated by the bankruptcy proceedings and sale.

Code construed: § 5031 (M. & V.); § 4288 (T. & S.).

Cases cited and approved: Peacock v. Tompkins, Meigs, 317; August v. Seeskind, 6 Cold., 167; House v. Swanson, 7 Heis., 32; Brooks v. Gibson, 7 Lea, 271; Nailor v. Young, 7 Lea, 738; Cowan v. Dunn, 1 Lea, 68.

3. SAME.  *Waiver of benefit of discharge.*

At commencement of bankruptcy proceedings, a suit was pending against the bankrupt by his creditor to set aside fraudulent conveyance of lands.  These lands were sold by the assignee in course of the bankruptcy proceeding, and purchased by the bankrupt himself. After his discharge, the bankrupt appeared in said cause and promised to pay the debt sued for.  Thereupon decree was entered against him for the debt and for sale of the land.  From this decree there was no appeal.

*Held:*  Decree is not void, but conclusive upon the bankrupt on collateral attack.

4. STATUTE OF LIMITATIONS.  *Ten years.  Judgments and decrees.*

Only final judgments and decrees fall within the operation of the statutes of limitations.  Hence, the enforcement of a decree for a debt, and sale of land to satisfy it, is not barred by a delay of ten or more years in its execution, the cause remaining in Court during that interval.

Code construed: § 3473 (M. & V.); § 2776 (T. & S.).

Cases cited and approved: *Ex parte* Spence, 6 Lea, 391; Gold *v.* Bush, 4 Bax., 579; Tyner *v.* Fenner, 4 Lea, 469.

5. SAME.  *Seven years.*

In suit to set aside fraudulent conveyance, seven years' possession of the land during the pendency of the suit by the debtor, under color of title, cannot defeat the creditor's right to have the lands sold for his debt.

Code construed: § 3459 (M. & V.); § 2763 (T. & S.).

---

FROM MADISON.

---

Appeal from Chancery Court of Madison County. A. G. HAWKINS, Ch.

HAYNES & HAYS for Epperson.

McCORRY & BOND, E. L. BULLOCK, and JOHN L. BROWN for Robertson.

LURTON, J. This bill was filed for the purpose of enjoining the execution ·of a decree of the Chancery Court in favor of the defendants, and against the present complainant. The defendants were creditors of complainant, and, as such, filed their bill in equity, under. Code (M. & V.), § 5031. This bill described four several tracts of land, being the same about to be sold under the decree now attacked, and charged that they had been fraudulently conveyed to one Coles, who was joined as a defendant. The prayer of the bill was, that the lands so described be attached, and that, on final hearing, they have judgment and decree upon their several debts, and that the sale to Coles be declared fraudulent—as intended to defeat creditors —and the lands sold for the satisfaction of their decrees. An attachment did issue, and was levied. Upon final hearing, January 27, 1879, the Court pronounced a decree in favor of the complainants in that bill, and directed that the lands so fraudulently conveyed be sold for the satisfaction of the debts found to be due.

This decree has never yet been executed, but from term to term was ·revived and renewed, the delay being clearly due to the urgent requests and entreaties of complainant. When at last it was about to be executed, the sale advertised by the Master in Chancery was enjoined by this bill.

The creditors obtaining these judgments subsequently assigned them to the defendants, Carter Bros. & Co., who have filed their answer as a cross-bill, and ask to have the decrees revived in their names, and to have the sale enforced for their benefit. Upon the pleadings and evidence, the Chancellor dismissed the original bill, and gave a decree upon the cross-bill according to its prayer. Complainant Epperson has appealed from the whole decree. The grounds relied upon in argument in support of the relief sought by complainant will be considered separately, but in such order as is most convenient, rather than as presented by the assignment of errors.

Within four months after the filing of the bill of Robertson & Botts and others, the defendant thereto, R. H. Epperson, became a voluntary bankrupt, and in December, 1876, received his final discharge. The lands attached were sold by his assignee in bankruptcy, without any order or decree of Court, and purchased by him February 9, 1877. He now insists that the effect of his bankruptcy was to discharge the attachments; that the land passed to his assignee in bankruptcy freed from any incumbrance; and that, by the purchase from the assignee, he has been re-instated in the title, and now holds the property unincumbered by the attachment proceeding theretofore begun against him.

An assignee in bankruptcy takes the property of the bankrupt in the precise situation in which it was at the commencement of the bankrupt pro-

ceedings, and subject to all the equities, liens, powers, and incumbrances existing against the property, except in so far as the bankrupt Act, by express provision, has avoided them. *Yeatman* v. *New Orleans Savings Institution*, 95 U. S., 764; *Stewart* v. *Platt*, 101 U. S., 731.

By the fourteenth section of last bankrupt Act, it was provided that upon the appointment of an assignee, and on the assignment to him of the bankrupt's property and estates, the "assignment shall relate to the commencement of the proceedings in bankruptcy, and thereupon, by operation of law, the title to all such property and estates, both real and personal, shall vest in said assignee, although the same is then attached on *mesne* process as the property of the debtor, and shall dissolve any such attachment made within four months next preceding the commencement of the bankruptcy proceedings." The property in controversy had been attached within four months of the commencement of the proceedings in bankruptcy. If the lien sought to be enforced under the decree of 1879, depended upon the attachments which had been levied, a very serious question would be presented for solution. The undoubted effect of the commencement of the proceedings within four months, would be to dissolve the attachment liens, thereby enabling the assignee to take the property unincumbered by any such lien. Another consequence would probably be that the purchaser from the assignee would acquire a title superior to that of a purchaser

under a decree subsequently entered enforcing the lien of the dissolved attachments. *Conner* v. *Long,* 104 U. S., 232.

But that is not this case. The lien of the creditors under the proceeding in question did not depend upon nor result from the attachment.

The decree of January 27, 1879, adjudges that the complainants, "by the filing of their bill herein, have acquired a lien upon said property, which is specifically set out in the bill herein."

By § 5031 of the Code, "any creditor, without first having obtained a judgment at law, may file his bill in chancery for himself, or for himself and other creditors, to set aside fraudulent conveyances of property or other devices resorted to for the purpose of hindering and delaying creditors, and subject the property, by sale or otherwise, to the satisfaction of the debt."

By the next section it is provided that writs of attachment or injunction *may* be granted on giving bond, with security, in such sum as the Chancellor may order.

That bill was filed under the section quoted, and the attachment issued by virtue of the next. The attachment was not essential. It operated only to impound the property and prevent further incumbrance or transfer. The creditors acquired a lien from the filing of the bill, which could only be defeated by failure to establish the existence of their debts or the fact of fraud. This has been repeatedly decided, beginning with *Peacock* v.

*Tompkins*, Meigs' Reports, 317, and followed and reiterated in a number of subsequent cases, only a few of which need be cited: *August* v. *Seeskind,* 6 Cold., 167; *House* v. *Swanson*, 7 Heis., 32; *Brooks* v. *Gibson*, 7 Lea, 271; *Nailor* v. *Young*, 7 Lea, 738; *Cowan* v. *Dunn*, 1 Lea, 68.

In *Brooks* v. *Gibson, supra,* it was expressly decided that a creditor filing such a bill and taking no attachment was entitled to priority over a creditor who filed a later bill, but sued out an attachment. The bankrupt Act only affected " attachments on *mesne* process." *Mesne* process means intermediate, intervening process. The term is a technical one, and, as used in the Act, would seem to require its obvious technical meaning. It has not been defined by the United States Supreme Court in any case to which we have been referred. In the absence of any construction of this phrase by that Court, we must construe it for ourselves. The lien declared and enforced by the decree of 1879 was not a lien resulting from the attachment. It was an equitable lien, and not a consequence of any attachment under *mesne* process. It was, then, not affected or dissolved by the bankrupt proceedings.

This principle has been twice decided in reported opinions by this Court—*House* v. *Swanson*, 7 Heis., 32, and *Cowan* v. *Dunn*, 1 Lea, 68. It is true that the bills in those cases had been filed under § 5026 of the Code, and that by § 5029 a lien is declared to exist from the filing of such bills.

But this was but a statutory declaration of a well-recognized equitable lien. Meigs' Rep., 317; 7 Lea, 271.

It follows that the assignee took this property subject to this equitable lien, and that he sold subject to this lien. He might have made himself a party to the chancery cause and contested the debt or the fact of fraud or the question of lien. If he succeeded, his title would have been unincumbered so far as that lien was concerned. He did not do so. His sale was, therefore, subject to the pending litigation, and the purchaser stands in his shoes.

But upon another and independent ground we reach the same result as to this property. The defendant in that suit, after his discharge in bankruptcy, and in January, 1878, came into Court, and on the record confessed his "willingness to pay said debts, * * * and that he has, since his proceedings in bankruptcy began, and since his discharge therein, and doth now, promise to pay the same." A year thereafter the decree now assailed was entered. At the date of each of these decrees he was a discharged bankrupt, and had already re-acquired the title to the property upon which the lien was declared. Independently of any question as to the effect of his bankruptcy upon the lien, resulting from the filing of the bill; and assuming that the lien had been dissolved and defeated by the commencement of his proceedings in bankruptcy, yet that Court, having jurisdiction of

the subject-matter and of the parties, adjudged, upon his own admission of indebtedness, that the complainants in that cause had a lien from the filing of their bill, and were entitled to enforce same by a sale. As before stated, the purchaser at the assignee's sale was the defendant in the pending suit. It may have been error to hold that the complainants therein had a lien, and were entitled to enforce same by a sale. But, obviously, the decree was not void. If erroneous, his only remedy was by resort to some appellate proceeding.

The next defense to be considered is that arising upon the plea of the statute of limitations of ten years barring actions upon judgments and decrees. Manifestly this statute applies only to final judgments and decrees. It cannot operate upon interlocutory decrees, or we should have the extraordinary spectacle of the earlier decrees in a prolonged litigation becoming barred before the rendition of a final decree at the termination of the litigation.

The decree ordering sale of this land was not final in such sense as to have entitled the defendants, as matter of right, to an appeal until after the sale therein ordered had been made. Code (M. & V.), § 3874; *Abbott* v. *Fogg*, 1 Heis., 742; *Gibson* v. *Widener*, 85 Tenn., 16.

The Chancellor, under the statute cited, might, in his discretion, have granted an appeal before the sale; but he was not required to do so, the decree not being final. The Court did not lose

its jurisdiction over the cause, but retained it for the purpose of enforcing its decree subjecting this property to the satisfaction of the debt it had found to be due the complainants therein. Until this sale should be made and the purchase-money collected and disbursed, it was a pending cause.

Where lands were sold under a decree of the Chancery Court, and a lien retained to secure purchase-money, it was held that a subpurchaser was not protected by the statute of limitations against the enforcement of the lien. Judge McFarland, in that case, said as to such defense:

" The *lis pendens* is notice to such a purchaser, and he takes subject to the jurisdiction and power of the Court to dispose of it, or make such decrees in regard to it as it might have done had he not purchased, and that without notice of his purchase. The Court having acquired jurisdiction of the cause in the first instance for the sale of the property, still retains it for the purpose of enforcing its decrees for the payment of the purchase-money." *Spence, ex parte*, 6 Lea, 391.

Upon the same ground, that the statute will not run against a right in litigation, it was held that the statute did not apply to the sureties upon the bond of an administrator appointed in the Chancery Court. Such sureties were held to be *quasi* parties to a pending suit, and therefore not protected. *Gold* v. *Bush*, 4 Bax., 579.

So the parties to a note executed to the Clerk in a pending cause were held to be *quasi* parties,

and not within the protection of the statute. *Tyner* v. *Fenner*, 4 Lea, 469.

Here the plea of ten years is set up, not by a stranger, who, pending the litigation, had purchased the lands sought to be subjected, but by the defendant himself. Clearly a party to such a pending suit cannot rely upon the statute to obstruct the execution of such a decree. Whether laches in the enforcement of the lien declared in such a decree would be a good defense when interposed by a stranger who had purchased *pendente lite* need not be discussed.

The complainant who now sets up and relies upon the delay in the execution of the decree of sale, is in no situation to complain. This delay has been, as is clearly shown, at his own request and for his own benefit.

The plea of the statute of seven years is also interposed. This rests upon the ground that complainant has been in possession, claiming and holding for himself, under the deed of his assignee in bankruptcy, for a period of seven years. This defense must fail for the reasons already stated as applying to the statute of ten years.

There is no error in the decree, and it must be affirmed.