## BANK OF DELROSE v. J. L. MANSFIELD et al.

Middle Section.    November 20, 1926.

Petition for Certiorari denied by Supreme Court May 7, 1927.

1. **Creditor's suit.   Under Shannon's Code a creditor may proceed in two ways to acquire a lien on property which a debtor has fraudulently conveyed.**
   A creditor may either file a bill in chancery without first obtaining judgment to set aside fraudulent conveyance of property or if he has a judgment with execution returned unsatisfied he may proceed to establish his lien.

2. **Creditor's suit.   Lien attaches when.**
   The lien attaches to property fraudulently conveyed upon the filing of a bill to set it aside. It is the filing of the bill that gives the lien.

3. **Creditor's suit.   Lien does not affect third party until service is had.**
   Although the lien attaches to property fraudulently conveyed upon the filing of a bill to set it aside the lien does not have complete vitality and become operative as to strangers to the suit until after there has been service on a material defendant.

4. **Courts.   Opinions.   Precedents when.**
   General expressions in every opinion are to be taken in connection with the case in which those expressions are used; if they go beyond the case they may be respected but ought not to control the judgment in a subsequent suit when the very point is presented for decision.

5. **Creditor's suit.   Evidence.   Under the evidence in the case held that the defendant acquired its lien before that of complainant.**
   In an action by complainant bank to set aside a certain conveyance and establish a lien against the property, where the defendant bank had secured a deed of trust after the filing of plaintiffs suit but before service was had on any material defendant, held that the complainant's lien did not attach until after service was had and defendant bank's lien was the first lien.

6. **Homestead.   A wife's homestead is not defeated by husband's fraudulent conveyance to her.**
   The wife's right of homestead is not defeated by the husband's fraudulent conveyance to her of the property to which that right has attached even though she participated in the fraud.

Appeal from Chancery Court, Lincoln County; Hon. Thomas B. Lytle, Chancellor.

Affirmed.

Eslick & Eslick, of Pulaski, for appellant.

Giles L. Evans, of Nashville, for appellees.

DeWITT, J.  This was a suit to avoid a conveyance of land by a judgment debtor to his wife and to subject the land to the satisfaction of a decree upon which execution had issued and been returned unsatisfied.

The complainant, Bank of Delrose, as judgment creditor of J. L. Mansfield, has appealed from the Chancellor's denial of the superiority of the lien of its bill to the right of homestead and the lien of a deed of trust held by the Union Joint Stock Land Bank of Louisville, Kentucky, upon land conveyed by Mansfield to his wife by deed which the Chancellor annulled as fraudulent.  The issues here presented are between the Bank of Delrose and Mansfield and his wife, as to homestead, and between said bank and the Union Joint Stock Land Bank as to priority of liens.

On October 4, 1922, the Bank of Delrose obtained a decree against Mansfield and others of a sum certain.  Execution was issued thereon and returned unsatisfied.  On August 28, 1922, Mansfield had conveyed all of his lands to his wife for the consideration of love and affection.  On January 4, 1923, the bill in this cause was filed by the Bank of Delrose seeking to set aside said conveyance, to fix a lien upon the land and sell the same in enforcement of the lien and satisfaction of the decree.  The execution, with return of nulla bona thereon, was exhibited.  Attachment was prayed for, "if it should become necessary," and injunction was prayed for, "if necessary," to restrain the debtor and his wife from further transferring or encumbering properties.  No attachment or injunction was issued, or applied for except as stated.  No certified copy of the execution was ever registered in the county where the land lies.

On January 6, 1923, subpoena to answer was issued for a son of J. L. Mansfield, and it was served on January 9, 1923.  On January 11, 1923, subpoena to answer was issued for J. L. Mansfield and his wife.  It was served on January 15, 1923.  By deed of trust executed on January 6, 1923, and registered on January 10, 1923, J. L. Mansfield and his wife conveyed the land to a trustee to secure the payment of their note for $1,000 and interest to the order of said Union Land Bank, given for money loaned, and which was used to pay another debt.  All of the parties to this transaction were, at the time of consummation, ignorant of the fact that the bill in this cause had been filed.  The Union Land Bank was held by the Chancellor, under its plea, to be an innocent purchaser, and to have the

paramount lien. He held that the complainant acquired no lien or right until issuance and service of process upon some material defendant, and that the Union Land Bank had the prior lien because its deed of trust was registered before such service of process was had. He sustained the right of Mansfield and his wife to homestead as against the complainant, although he found that the deed of Mansfield to his wife was fraudulent in law and in fact. It does not appear from the evidence that Mrs. Mansfield was a party to the fraud but in her answer she averred that she was entirely ignorant of the execution and registration of the deed.

Did the Bank of Delrose, by the mere filing of its bill, acquire a lien upon the land operating as a lis pendens or constructive notice to the Union Land Bank? It is not controverted that upon the filing of such a bill a lien is created as between the creditor and the fraudulent vendee; but it is insisted that the lien does not ripen into effectiveness against a purchaser without knowledge until process is issued and served upon some material defendant, or unless attachment has been issued and levied as provided in Shannon's Code, sec. 6098. The very contrary of this latter proposition is contended in behalf of the appellant, Bank of Delrose that the lien is effective, not only against the fraudulent vendee, but also against a purchaser, without issuance of process of any kind.

The bill was filed under sections 6091 and 6097 of Shannon's Code. In section 6091 it is provided that chancery courts have exclusive jurisdiction to aid a creditor, by judgment or decree, to subject the property of the defendant which cannot be reached by execution to the satisfaction of the judgment or decree under the provisions of the code. This section had its origin with the Code of 1858. In section 6097 it is provided that any creditor, without first having obtained a judgment at law, may file his bill in chancery for himself, or for himself and other creditors, to set aside fraudulent conveyances of property, or other devices resorted to for the purpose of hindering and delaying creditors and subjecting the property by sale or otherwise to the satisfaction of the debt. This section is section 10 of chap. 365 of the Acts of 1851-52. Chap. 11 of the Acts of 1832 is brought into Shannon's Code in sec. 6092 to 6096, inclusive. Sections 6092-3-4 authorize a creditor whose execution has been returned unsatisfied to file a bill in chancery against the defendant in the execution and any other person or corporation to compel the discovery of property. Section 6095 provides that the creditor has a lien upon the property from the filing of his bill, but he may acquire a lien from the rendition of the judgment or decree by causing a memorandum thereof, within sixty days of its rendition, to be registered and by filing his bill within thirty days from the return of the execution unsatisfied. This letter section provides two methods of creating a lien upon the prop-

erty of the debtor. In such cases the lien is created by the filing of the bill. It thus arises without an attachment, for the attachment in such cases is ancillary and not original. House v. Swanson, 7 Heisk., 32; Cowan v. Dunn, 1 Lea., 70; Brooks v. Gibson, 7 Lea., 274; Epperson v. Robertson, 91 Tenn., 407; Jordan v. Everett, 93 Tenn., 395; Templeton v. Mason, 107 Tenn., 628.

In Epperson v. Robertson, supra, it was said that the attachment in such a case operates only to impound the property and prevent further encumbrance or transfer; that the provision of the statute that the creditor has a lien from the filing of his bill is but a statutory declaration of a well recognized equitable lien. It is the filing of the bill that gives the lien. Peacock v. Tompkins, Meigs., 317; Brooks v. Gibson; House v. Swanson; Cowan v. Dunn, supra.

It is uniformly held in the cases of this kind that a lien attaches to property frauduently conveyed upon the filing of a bill to set it aside. 6 Tenn. Ency. Dig., 449. But the question is, when does this lien have complete vitality and become operative as to strangers to the suit?

Sec. 6097 of Shannon's Code is sec. 4288 of the Code of 1858, condensed from sec. 10, of chap. 365 of the Acts of 1851-1852. It operated merely to enlarge the jurisdiction of courts of equity so that no longer was it necessary for the creditor to obtain a judgment at law before filing a bill to set aside a fraudulent conveyance, and subject the property to the satisfaction of his debt. McKeldin v. Gouldy, 91 Tenn., 672; Graham v. Merrill, 5 Cold., 622. Although the creditor has already obtained a judgment and execution with nulla bona return, he is entitled to file his bill, either under the inherent powers of the court of equity, or under the extended power of that court under the statute to aid him as a creditor. As aforesaid, the lien then exists from the filing of the bill, independent of statute. An examination of our numerous reported cases of this kind, whether based upon the statute or upon the inherent powers of courts of equity, fails to show that in any of them this lien was held to affect a purchaser without knowledge of the filing of the bill, whose right accrued before the issuance or service of process upon any defendant. In certain of these cases, particularly in Dillard v. Smith, 105 Tenn., 371, broad language was used, in determining the effect of the filing of a bill under section 6097. In that case it was said that by force of the rule of lis pendens operating as constructive notice to all persons of the pendency and the purpose of the suit, the lien follows into whosesoever hands it may go and holds the property wherever found subject to the satisfaction of the decree rendered in favor of the creditor complainant. But in that case the fraudulent vendee had knowledge of the filing of the bill at the time of his purchase of the

goods. The facts were that on January 1, 1898, Smith Brothers sold their stock of merchandise, together with a house and lot, a mule, horse, wagon and cow to Samuel Smith, another brother; that on January 28, 1898, a bill was filed by Dillard & Coffin Company attacking this conveyance as fraudulent; that on April 1, 1898, said complainant by amended bill attacked a conveyance by Samuel Smith to three persons named Newsom who had actual and constructive notice of the complainant's lien and had purchased pendente lite. It does not appear from the opinion just when the process was issued and served under the original bill, but it may be safely assumed that it was prior to the sale to the Newsoms. The court laid much emphasis on the fact that the Newsoms had not only constructive but actual notice of the lien of the bill and of the fraud between the original parties, and that they must be considered as having converted the goods and rendered themselves liable for the value of the same.

In Boorum Company v. Armstrong, 37 S. W., 1098, the Court of Chancery Appeals, in a dictum, referring to sections 6092 to 6095, inclusive, said that these sections have often been before our Supreme Court on questions relating to liens, and it has been repeatedly held that the lien dates from the filing of the bill, without regard to process, and that no attachment or even injunction, was necessary—citing Creswell v. Smith, 8 Lea., 689; House v. Swanson, 7 Heisk., 32; Cowan v. Dunn, 1 Lea., 70; Brooks v. Gibson, 7 Lea., 274; Cone v. Paute, 12 Heisk., 506. But the principal question in that case was as to the sufficiency of the description of the property in the bill. The precise question before us was not involved. Inasmuch as careful distinction must be made in determining the question before us, we must apply to the interpretations of the general language above-quoted the maxim that general expressions in every opinion are to be taken in connection with the case in which those expressions are used; that if they go beyond the case they may be respected but ought not to control the judgment in a subsequent suit when the very point is presented for decision. Cohens v. Virginia, 6 Wheat., 399, 5 L. Ed., 290.

In Harris v. Beasley, 123 Tenn., 605, it appeared that the defendant, the judgment debtor, conveyed the land on the day after the filing of the bill and the service of process upon him. It was a bill by a judgment creditor filed after execution and nulla bona return, to foreclose a mortgage on the debtor's land and to subject the surplus to the satisfaction of the judgment. The court said that the filing of the bill describing the property and stating a case for this form of relief fastens a lien upon the property —citing cases. But the court also said that this lien becomes operative immediately upon the service of process upon the debtor after the filing of the bill, and such lien will not be affected by the debtor's

sale of his interest in the land to another person, made on the next day, and even before service of process upon him; for the lien attaches upon the filing of the bill, and the service of process is not prerequisite to the creation of the lien. The service of process on the debtor could in no way even avail to remove the property from the operation of the lien. The lis pendens became operative immediately upon the service of the process after the filing of the bill. It was not essential, in order to create the lis pendens, that service should be made on the purchaser from the debtor although he was a party to the suit.

The court said that service of process is not prerequisite to the creation of the lien, and yet the lien becomes operative immediately upon the service of the process. Our interpretation of this language must be that although the lien arises upon the filing of the bill it does not have complete vitality until process is served on a material defendant. In that case this had been done.

In Bryan v. Zarecor, 112 Tenn., 503, it was sought by a judgment creditor to impound the proceeds of a judgment which the debtor had obtained against a corporation. The contest was between the complainant, who obtained an attachment by garnishment and had it levied on the date of the filing of the bill, and two creditors, one having a garnishment served and the other filing an assignment and giving notice, on the following day. The principal question was whether or not the complainant acquired a lien by the filing of his bill, and this was answered in the negative because the judgment was leviable under execution by garnishment. Equity had no inherent jurisdiction in such case and the statutes did not confer it. This decision in our opinion does not control the present case.

The case of Williamson v. Williams, 79 Tenn., 355, appears to be more nearly in point than any other of our reported cases. The bill was filed by a judgment creditor to set aside certain conveyances of land by the debtor, among them a tract conveyed to Jones on February 14, 1867. Jones conveyed it to Wallace, a son-in-law of the debtor, on July 13, 1868. Wallace on August 31, 1868, conveyed it to Terry, a purchaser who had no knowledge that just before August 31, the bill had been filed to set aside the previous conveyances as fraudulent, and who had no knowledge of the frauds. Process was not served on Wallace, one of the fraudulent vendees, until September 7, 1868. When Terry took title the bill stood in court without process and a lien had arisen; but the Supreme Court said:

> "Is this such a lis pendens as binds the purchaser? Unless otherwise provided by the statute the authorities all agree that the lis pendens commences with the service of the process on the defendant to the suit, as to third parties at least: Tharpe

v. Dunlap, 4 Heisk., 586; and authorities there cited; Murray
v. Ballou, 1 John. Ch. R., 576. This is not an attachment bill
nor is it a bill under sections 4283, 4284, 4285 and 4286, of the
Code—Act of 1832—for the discovery of property or choses
in action due or held in trust, the last section providing that
under such a case the creditor has a lien on the property from
the filing of his bill, or by registration of his judgment, under
secs. 2984 and 2985 of the Code, within sixty days.''

The court further said:

"It is simply the case of a creditor who had had a judgment
in the circuit court, on which there had been a return of nulla
bona, and which had been enjoined for usury in the chancery
court, when injunction was dissolved, after the above lapse
of time, as to part of his debt, who then files his bill to enforce
the collection of this balance against land charged to have
been fraudulently conveyed. It stands under the head of
equity jurisdiction for the removal of clouds on titles before a
sale of property, and to set aside a conveyance fraudulently
made constituting such a cloud and obstacle to the enforce-
ment of a proper claim of complainant. As far as we can see
there is no special provision of the Code giving the lien be-
yond the rule of lis pendens, and entitling the complainant only
to the benefit of this well-established doctrine as settled in our
law.

"The doctrine of lis pendens in many cases operates harshly
upon innocent purchasers, and can only be sustained on
grounds of public convenience: Murray v. Ballou, 1 John. Ch.
R., 576.

"This being so, whenever the case is within it, it must be en-
forced, but should not be extended beyond its settled require-
ments and well defined limitations.

"It would seem to follow that Terry's title cannot be af-
fected by this rule, as the party whose conveyance is to be de-
feated had not been served with process, and although he had
knowledge of the fact that a suit had been commenced, to which
he was party, still this is not such a lis pendens as should bind
an innocent purchaser from him, without notice of the suit, if
Terry be such. That he is, is sustained by his unequivocal
denial in his sworn answer responsive to the bill, which is
equivalent to two witnesses or one and corroborating circum-
stances, as well as his deposition most clearly sustaining this
denial. There is no contra proof on this question.''

In Staples v. White, Handly & Company, 88 Tenn., 30, the court
said:

"As to strangers to a pending suit, the constructive notice
of lis pendens, where only such notice is relied upon, begins

with the service of the subpoena upon the material defendants to the suit pending." Tharpe v. Dunlap, 4 Heisk., 586; Williamson v. Williams, 11 Lea., 363.

This is the general rule. Story on Equity (14th Ed.), sec. 537; Pomeroy on Eq. Juris. (3rd Ed.), sec. 634; 17 R. C. L., p. 1033; 38 C. J., p. 27. This doctrine so applied in Williamson v. Williams and Staples v. White, Handly and Company, must be now applied as determinative of the question presented.

The right of defendants, Mansfield and wife, to the exemption of a homestead interest in the land is fully sustained by the rule announced in Hamby v. Lane, 107 Tenn., 698, that the wife's right of homestead is not defeated by the husband's fraudulent conveyance to her of the property to which that right has attached even though she participated in the fraud. This question, so long reserved and in doubt, was completely settled in that decision.

It results that the decree of the Chancellor is in all particulars affirmed. The costs of the appeal will be adjudged against the appellant and the sureties on its cost bond. The cause will be remanded to the chancery court for execution of its decree.

Faw, P. J., and Crownover, J., concur.