RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0326P (6th Cir.)
File Name: 01a0326p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JALAPENO PROPERTY
MANAGEMENT, LLC,
          *Plaintiff-Appellant,*

          *v.*

GEORGE DUKAS; JUSTINE
DUKAS,
          *Defendants-Appellees.*

No. 00-5477

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 83-00693—Curtis L. Collier, District Judge.

Argued: June 6, 2001

Decided and Filed: September 14, 2001

Before: BATCHELDER and MOORE, Circuit Judges;
          BERTELSMAN, District Judge.

---

*The Honorable William O. Bertelsman, United States District Judge
for the Eastern District of Kentucky, sitting by designation.

———————————

**COUNSEL**

**ARGUED:** David D. Pavek, DAVID PAVEK & ASSOCIATES, Denver, Colorado, for Appellant. Douglas L. Dunn, MORRISON, TYREE & DUNN, Knoxville, Tennessee, for Appellees. **ON BRIEF:** David D. Pavek, Lisa M. Todd, DAVID PAVEK & ASSOCIATES, Denver, Colorado, for Appellant. Douglas L. Dunn, MORRISON, TYREE & DUNN, Knoxville, Tennessee, for Appellees.

MOORE, J., delivered the opinion of the court, in which BERTELSMAN, D. J., joined. BATCHELDER, J. (pp. 16-22), delivered a separate concurring opinion.

———————————

**OPINION**

———————————

KAREN NELSON MOORE, Circuit Judge. Plaintiff-Appellant Jalapeno Property Management, LLC brought suit to enforce a judgment against Defendants-Appellees George and Justine Dukas for liability on a defaulted promissory note, which the Dukases had guaranteed. The district court dismissed Jalapeno's claim as barred by the applicable state statute of limitations, and refused to apply a longer federal statute of limitations found in the Federal Debt Collection Procedures Act, ("FDCPA,") 28 U.S.C. § 3001 *et seq.* Jalapeno appeals the district court's dismissal. For the following reasons, we **REVERSE** the judgment of the district court.

**I. BACKGROUND**

This case revolves around a now-defaulted promissory note which was executed on September 20, 1982 by a political campaign committee, "Tennesseans for Tyree," and signed by the campaign's chairman, P. Douglas Morrison, for the purpose of funding candidate Randy Tyree's 1982

Dukases became final. Since the time for taking an appeal from this judgment had expired by the time the Dukases sought reconsideration, Rule 60(b)(1) can afford no relief. *Pierce*, 770 F.2d at 451. Since the judgment was not void within the meaning of Rule 60(b)(4), the district court erroneously reconsidered its renewal of the judgment against the Dukases. Although this result might reinstate a ruling premised upon misconceptions of the law, a Rule 60(b) motion cannot substitute for an appeal. *Hopper*, 867 F.2d at 294. Accordingly, I join the majority in reversing the judgment of the district court.

gubernatorial race in Tennessee. In exchange for the note, which was payable on demand or, in the event of no demand, within 90 days after execution of the note, the United American Bank ("UAB") loaned Tennesseans for Tyree $378,750.00.[1] On November 15, 1982, George and Justine Dukas, Tyree's in-laws, signed a broadly worded "Continuing Guaranty," which guaranteed all of Tennesseans for Tyree's debts "now existing or hereafter arising" for an "unlimited" sum of money. UAB subsequently failed in May 1983, and the Federal Deposit Insurance Corporation ("FDIC"), acting in its corporate capacity, purchased the defaulted promissory note and other assets of the bank from the bank's receiver. The Continuing Guaranty was found in UAB's files with the note; apparently, it had been included in the file to support the loans to Tennesseans for Tyree when the bank was being investigated by federal banking officials.

This litigation began on November 16, 1983, when the FDIC filed a complaint in federal district court against Tennesseans for Tyree, Randy Tyree, P. Douglas Morrison, and George and Justine Dukas as members of the political campaign seeking to enforce the defaulted promissory note; the FDIC also sought to hold the Dukases liable as guarantors of the note. The parties filed cross-motions for summary judgment. On July 24, 1984, the district court granted summary judgment in favor of Tyree, Morrison, and the Dukases as members of the political campaign committee. The district court refused, however, to grant summary judgment for the Dukases in their role as guarantors of the note.[2] On February 26, 1985, the district court granted the

---

[1]The note bears interest from the date of the loan at 1 ½ percent in excess of the base or prime rate of interest in effect from time to time at UAB. Joint Appendix ("J.A.") at 17, 51.

[2]It is unclear how the district court disposed of the cause of action against Tennesseans for Tyree. The district court noted that the group did not move for summary judgment, but it then granted summary judgment as to all individual defendants who were members of the group. The district court also stated that the group "is probably no longer in

FDIC's motion for summary judgment against the Dukases as guarantors of the note. Judgment was entered for the FDIC in the amount of $378,750.00, plus interest and attorney's fees in accordance with the terms of the note. On March 25, 1985, the FDIC filed a notice of appeal, stating that it appealed the district court's July 24, 1984 judgment upon the conclusion of the action by the February 26, 1985 judgment. The Dukases cross-appealed from the district court's judgment of February 26, 1985.

In an unpublished opinion, *FDIC v. Morrison*, Nos. 85-5272, 85-5273, 1987 WL 37065 (6th Cir. Apr. 14, 1987), a panel of this court affirmed the district court's grant of summary judgment for the FDIC as to its claim against George and Justine Dukas, but reversed the grant of summary judgment for Tyree and Morrison and remanded for further proceedings.[3] The FDIC then filed a Motion for Entry of Judgment Specifying Sum Certain in the district court in the amount of $703,401.71, which included the principal amount of the loan plus interest and attorney's fees. The motion averred that "[t]he time for any further appeal on this matter has expired" and that the judgment is "final." J.A. at 50. On September 15, 1987, the district court entered a Judgment for Sum Certain for the amount requested. On May 3, 1988, the FDIC applied for a Writ of Execution to satisfy the judgment against the Dukases, which was granted by the district court and executed upon local banks. The writs were never satisfied.

On August 1, 1988, in accordance with this court's mandate, the district court held a bench trial on the FDIC's claims against Tennesseans for Tyree, Morrison, and Tyree,

---

existence." J.A. at 18. On appeal, however, this court stated that the district court had granted summary judgment in favor of Tennesseans for Tyree. *FDIC v. Morrison*, Nos. 85-5272, 85-5273, 1987 WL 37065, *1 (6th Cir. Apr. 14, 1987).

[3] This court's ruling left the purported grant of summary judgment to Tennesseans for Tyree untouched.

---

*also Friedman v. Estate of Presser*, 929 F.2d 1151, 1154 (6th Cir. 1991) (noting that where facts of service are not in dispute, adequacy of service of process presents a pure question of law). Under Rule 5, "there is no guarantee that the party personally will receive notice. It can generally be presumed, however, that a party's attorney will notify the party of important developments and take appropriate action to protect the party's interests." *Barlow v. Ground*, 39 F.3d 231, 233 (9th Cir. 1994). To afford constitutionally adequate due process, service of process must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (citations omitted). Applying this standard, the FDIC complied with Rule 5 by serving opposing counsel of record with the motion for renewal of the judgment and, on the facts of this case, service on the counsel of record provided adequate notice to the Dukases. *See Guam Econ. Dev. Auth. v. Ulloa*, 841 F.2d 990, 993 (9th Cir. 1988) (holding that service upon the attorney of record satisfies the federal rules even if that lawyer no longer represents the litigant). That the Dukases in fact litigated the motion for reconsideration through different counsel does not alter this conclusion because the Dukases did not inform the court of the retention of new counsel prior to the filing of the FDIC's motion to renew the judgment. If the counsel of record failed to contact either the Dukases themselves or their new representative upon being served with the FDIC's motion, an action for malpractice might lie, but such eventualities do not alter the due process analysis. Moreover, the Dukases have not challenged the sufficiency of process and did not seek reconsideration on that ground.

For these reasons, when the district court entered the order renewing the judgment, the court did not act "in a manner inconsistent with due process of law." *Antoine*, 66 F.3d at 108. Therefore, the court did not enter a void judgment. At most, renewal of the judgment implicitly rested upon an incorrect calculation of the date the judgment against the

constitutes an affirmative defense to liability, not a jurisdictional bar to entry of a writ of execution or to other judicial enforcement action. TENN. R. CIV. P. 8.03 (requiring parties defending actions to plead affirmatively the "statute of limitations . . . and any other matter constituting an avoidance or affirmative defense"). *See also, e.g.*, *Eperson v. Robertson*, 19 S.W. 230, 231 (Tenn. 1892); *Ballard v. Scruggs*, 18 S.W. 259, 260 (Tenn. 1891). Accordingly, the district court's order renewing judgment against the Dukases at most represents an erroneous judgment because it implicitly rests upon an incorrect understanding of when the judgment against them became final. Therefore, the district court erred by reconsidering its judgment. Although I understand the majority's desire to articulate a bright-line rule in this circuit regarding the applicability of Rule 54(b), the procedural posture of this case precludes such an effort by limiting the inquiry to the more narrow issue of whether the district court had jurisdiction to renew the judgment. Because I conclude that it did, the renewal of the judgment was not a void order, and I agree that the district court erred in reconsidering that ruling.[2]

As a concluding note, I add that although the Dukases failed to respond to the FDIC's motion to renew the judgment, the district court's renewal of the judgment did not occur "in a manner inconsistent with due process" so as to render that order void. *Antoine*, 66 F.3d at 108. The record shows that the FDIC served the motion to renew the judgment upon the Dukases' counsel of record as of 1987. Rule 5(b) provides that service of a party represented by counsel "shall be made upon the attorney." "Service upon the attorney . . . shall be made by delivering a copy to the attorney . . . ." FED. R. CIV. P. 5(b). This court "exercise[s] plenary review over legal issues involving the adequacy of service[.]" *LSJ Inv. Co. v. O.L.D., Inc.*, 167 F.3d 320, 322 (6th Cir. 1999). *See*

---

[2] I agree with the majority that resolution of this appeal based on consideration of the applicability of Rule 54(b) obviates the need to examine the availability of the 20-year statute of limitations under the Federal Debt Collection Procedure Act.

in which the FDIC sought to hold the latter two defendants personally liable for the promissory note. At the conclusion of the trial, the district court found that neither Tyree nor Morrison were liable for the note, nor had they intended to mislead banking authorities; the district court also entered a default judgment against Tennesseans for Tyree, finding it liable on the promissory note in the amount of $665,813.57, plus $117,529.11 for attorney's fees, expenses, and costs.

The FDIC then filed a notice of appeal as to the judgment entered in favor of Tyree and Morrison. Another panel of this court affirmed the judgment of the district court in *FDIC v. Tennesseans for Tyree*, 886 F.2d 771, 773 (6th Cir. 1989); the mandate for that decision issued on October 27, 1989.

On July 26, 1999, almost ten years after this court's last mandate in the litigation, the FDIC filed a Motion to Renew Judgment, claiming that the judgment entered by the district court against the Dukases on September 15, 1987 had not been satisfied. Citing Tenn. Code Ann. § 28-3-110,[4] the FDIC asserted that "[t]he statutory period of ten (10) years since the entry of the judgment has not expired, due to the fact that this matter was appealed and the time during which the appeal was pending is not counted for purposes of determining the expiration date of a judgment." J.A. at 84.

The Dukases failed to respond to this motion because it was not served on their current counsel. On August 4, 1999, the district court determined that the judgment against the Dukases had not expired and that the FDIC was owed $703,401.71 plus interest, as was entered in the September 15, 1987 judgment; the court then ordered that the judgment against the Dukases be renewed and the lien continued for another ten years. On October 20, 1999, the Dukases filed a Motion to Set Aside Order Renewing Judgment, on the ground that the applicable ten-year statute of limitations under

---

[4] The statute provides for a ten-year statute of limitations after the cause of action has accrued for "[a]ctions on judgments and decrees of courts of record of this . . . state." TENN. CODE ANN. § 28-3-110.

Tennessee law had expired and that the court therefore lacked jurisdiction over them.

On October 21, 1999, the FDIC filed a notice that it had transferred and assigned its right, title, and interest to the judgment entered on September 15, 1987, including the promissory note and the Continuing Guaranty which were the basis of that judgment, to Jalapeno Property Management, LLC. On October 27, 1999, Jalapeno filed an Application for Writ of Execution to satisfy the judgment against the Dukases for the amount of $1,371,295.31, which included the amount of the original judgment plus interest from August 15, 1987.

In response to the Dukases' Motion to Set Aside Order, Jalapeno advanced two alternative arguments: first, that the judgment against the Dukases did not expire prior to the FDIC's filing of its Motion to Renew Judgment because the judgment did not accrue until October 27, 1989, when this court issued its mandate affirming the district court's dismissal of the remaining claims against Tyree and Morrison and the rights of all parties had been adjudicated; and, in the alternative, that the FDCPA's twenty-year statute of limitations governed Jalapeno's claim.

On February 29, 2000, the district court granted the Dukases' Motion to Set Aside Order, pursuant to its authority under Fed. R. Civ. P. 60(b). The district court first determined that the FDCPA, 28 U.S.C. § 3201, which provides for a twenty-year statute of limitations on the recovery of all judgment liens owed to the United States under the Act, did not govern Jalapeno's claim. The district court agreed with the Dukases that, because the original debt arose between two private parties (UAB and Tennesseans for Tyree), the FDCPA's statutory exclusion for debts "owing under the terms of a contract originally entered into by only persons other than the United States," 28 U.S.C. § 3002(3)(B), rendered the statute inapplicable. J.A. at 108. The district court then held that the FDIC did not move to renew the judgment within the ten-year statute of limitations period provided by state law. The court reasoned that because

the rare instance of a clear usurpation of power will a judgment be rendered void.

*Lubben v. Selective Serv. Sys. Local Bd. No. 27*, 453 F.2d 645, 649 (1st Cir. 1972) (footnotes omitted). For purposes of Rule 60(b)(4), a judgment is void if a court entered an order outside its legal powers. *Carter*, 136 F.3d at 1005 (citation omitted). *See also Antoine*, 66 F.3d at 108 (stating that a judgment is void under Rule 60(b)(4) only "if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law") (quoting *In re Edwards*, 962 F.2d 641, 644 (7th Cir. 1992)). This distinction between void and erroneous judgments serves to prevent the use of the Rule as a substitute for an appeal. *Hopper*, 867 F.2d at 294 ("The parties may not use a Rule 60(b) motion as a substitute for an appeal."). "[I]f a party fails to appeal an adverse judgment and then files a Rule 60(b)(4) motion after the time permitted for an ordinary appeal has expired, the motion will not succeed merely because the same argument would have succeeded on appeal." *Kocher v. Dow Chem. Co.*, 132 F.3d 1225, 1229 (8th Cir. 1997) (citation omitted).

In light of these principles, the question before this court is a narrow one: whether the district court lacked jurisdiction to enter the order renewing the judgment against the Dukases. Relying on Rule 54(b) Jalapeno asserts that in reconsidering its prior order the district court incorrectly calculated the date on which Tennessee's ten-year statute of limitations for bringing actions on judgments began to run. Nothing about this argument implicates the jurisdiction of the district court to enter an order renewing the judgment against the Dukases. While the majority expresses its opinion that the Federal Circuit wrongly decided *King Instrument Corp. v. Otari Corp.*, 814 F.2d 1560 (Fed. Cir. 1987), and announces that Rule 54(b) applies during all phases of litigation, these conclusions go well beyond the question before the court in this appeal and are not necessary for its resolution. Whatever application Rule 54(b) has in this matter, under Tennessee law the ten-year statute of limitations in section 28-3-110

movant's motion to vacate the judgment under Rule 60(b)(4)." *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 108 (6th Cir. 1995) (quoting *United States v. Indoor Cultivation Equip. from High Tech Indoor Garden Supply*, 55 F.3d 1311, 1317 (7th Cir. 1995)). *See also* 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2862 (2d ed. 1995) ("There is no question of discretion on the part of the court when a motion is under Rule 60(b)(4)."). As many circuits have recognized, the absence of discretion under Rule 60(b)(4) necessitates de novo review. *Sea-Land Serv., Inc. v. Ceramica Europa II, Inc.*, 160 F.3d 849, 852 (1st Cir. 1998); *Carter v. Fenner*, 136 F.3d 1000, 1005 (5th Cir. 1998); *Wilmer v. Board of County Comm'rs. of Leavenworth County*, 69 F.3d 406, 409 (10th Cir. 1995); *Indoor Cultivation Equip.*, 55 F.3d at 1317; *Export Group v. Reef Indus., Inc.*, 54 F.3d 1466, 1469 (9th Cir. 1995); *Page v. Schweiker*, 786 F.2d 150, 152 (3d Cir. 1986). For this reason—and not because of any arguments the parties did or did not make—de novo review is proper in this case.

Because Rule 60(b)(4) embodies an important distinction between a void judgment and an erroneous one, *Chambers v. Armontrout*, 16 F.3d 257, 260 (8th Cir. 1994) ("[A] judgment is not void merely because it is erroneous.") (quotation omitted), a reviewing court only examines whether the judgment reconsidered is void.

A void judgment is to be distinguished from an erroneous one, in that the latter is subject only to direct attack. A void judgment is one which, from its inception, was a complete nullity and without legal effect. In the interest of finality, the concept of void judgments is narrowly construed. While absence of subject matter jurisdiction may make a judgment void, such total want of jurisdiction must be distinguished from an error in the exercise of jurisdiction. A court has the power to determine its own jurisdiction, and an error in that determination will not render the judgment void. Only in

the judgment against the Dukases became final on October 16, 1987, thirty days after the district court's September 15, 1987 judgment against them, and the FDIC did not file its Motion to Renew until after October 16, 1997, which was the ten-year expiration date, the FDIC's motion was untimely. The district court specifically rejected Jalapeno's argument that, pursuant to Fed. R. Civ. P. 54(b), final judgment was not entered until October 27, 1989, this court's ultimate disposition of the case.

Jalapeno timely appealed the district court's judgment.

## II.  ANALYSIS

### A.  Standard of Review

The district court granted the Dukases' Motion to Set Aside Order Renewing Judgment pursuant to Fed. R. Civ. P. 60(b). Preliminarily, we note that it is unclear under which provision of Rule 60(b) the district court relieved the Dukases from its original judgment. Based on several oblique references in the district court's opinion to Rule 60(b)(6), we presume that the district court acted pursuant to that provision, which grants the district court power to "relieve a party or a party's legal representative from a final judgment" for any reason, other than the first five reasons enumerated in the Rule, which "justif[ies] relief from the operation of the judgment." FED. R. CIV. P. 60(b)(6).

Typically, a district court may grant relief under Rule 60(b)(6) only for "exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." *Blue Diamond Coal Co. v. Trustees of the UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001) (quoting *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990)). Neither party has briefed or argued to this court that the district court erred by granting the Dukases' motion pursuant to the "extraordinary circumstances" requirement inherent in Rule 60(b)(6) relief; instead, Jalapeno and the Dukases both address the merits of the claims that were before the district court. Therefore, we will not consider

whether the district court's judgment was based on an improper use of Rule 60(b)(6), but instead will turn our attention to the merits of this litigation.[5] Although we review a district court's grant of a motion to reconsider under Rule 60(b)(6) for an abuse of discretion, *see Blue Diamond*, 249 F.3d at 524, we treat the district court's interpretation and application of the Federal Rules of Civil Procedure as a question of law and, as with all legal questions, review this analysis de novo. *See Indiana Lumbermens Mut. Ins. Co. v. Timberland Pallet & Lumber Co.*, 195 F.3d 368, 374 (8th Cir. 1999).

## B.  Tennessee's Ten-Year Statute of Limitations

Jalapeno claims that the district court erred by measuring the start of Tennessee's ten-year statute of limitations from October 16, 1987, thirty days after judgment was imposed against the Dukases.  According to Jalapeno, the statute of limitations did not begin to run until October 27, 1989, when this court's mandate issued as to the last of the claims in the

---

[5]By addressing the merits in this case, we do not mean to condone a district court's improvident use of Rule 60(b)(6) as a means of providing relief from final judgments.  As noted, Rule 60(b)(6) relief should only be granted by a district court in extraordinary circumstances.  As the concurrence points out, Rule 60(b) relief was not meant to substitute for a timely appeal to this court.  In this case, although the district court did not explicitly state why it was granting Rule 60(b)(6) relief, we can infer from its order that it was convinced by the Dukases' argument that the applicable statute of limitations had run, and that this created an extraordinary circumstance warranting relief.  Although we could have analyzed this inference to determine whether the running of the statute of limitations presented an "extraordinary circumstance" sufficient to warrant Rule 60(b)(6) relief, neither party briefed or argued this issue to this court.  We therefore review the district court's explicit reasoning in granting the Dukases' motion for relief, as the parties have focused exclusively upon this question.  In the end, because we believe the district court made an error of law in its analysis of the statute of limitations issue, and because an error of law constitutes an abuse of discretion, *see Huey v. Stine*, 230 F.3d 226, 228 (6th Cir. 2000), we do not even need to reach the question whether the running of the statute of limitations would constitute an "exceptional circumstance" under our Rule 60(b)(6) jurisprudence.

---

60(b)(4).  In attempting to discern the clause of Rule 60(b) under which the Dukases brought their motion, this court looks to the substance of the relief requested.  *See Futernick v. Sumpter Township*, 207 F.3d 305, 313 (6th Cir. 2000); *Sunfire Coal Co. v. United Mine Workers of Am.*, 335 F.2d 958, 962 (6th Cir. 1964).  *Accord Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 880 (9th Cir. 2000) ("[T]he label attached to a motion does not control its substance.") (quoting *United States v. State of Oregon*, 769 F.2d 1410, 1414 n.4 (9th Cir. 1985)).  In their motion, the Dukases sought to set aside the order of the district court renewing the FDIC's judgment against them on the ground that the court "*lacks jurisdiction* to renew the judgment because it had expired by operation of law prior to entry of the order."  (Emphasis added.)  Although not doing so expressly, this claim invokes Rule 60(b)(4), which allows a court to relieve a party of a judgment if that judgment is void. Therefore, because the Dukases' motion invokes one of the more specific subsections of Rule 60(b) for granting relief, the standards of Rule 60(b)(4) should guide the majority's review rather than the more amorphous and equity-driven concerns behind Rule 60(b)(6).  *Blue Diamond Coal Co. v. Trustees of the UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001) (quoting *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990)).[1]

Under Rule 60(b)(4) a deferential standard of review is not appropriate because "[i]f the underlying judgment is void, it is a *per se* abuse of discretion for a district court to deny a

---

[1]Arguably, the motion could also have been brought under Rule 60(b)(1), which permits relief in the case of "mistake."  This court has read this basis for relief under Rule 60(b) as extending to claims of legal error.  *Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir. 1989).  Such a motion, however, must be brought within the normal time for taking an appeal.  *Pierce v. United Mine Workers of Am. Welfare & Ret. Fund for 1950 & 1974*, 770 F.2d 449, 451 (6th Cir. 1985) (citing *Barrier v. Beaver*, 712 F.2d 231, 234 (6th Cir. 1983)).  By the time the Dukases sought reconsideration, the time for taking an appeal had expired.  Therefore, the Dukases' motion can only be one brought under Rule 60(b)(4).

---
**CONCURRENCE**
---

ALICE M. BATCHELDER, Circuit Judge, concurring. I join the majority in concluding that the district court committed reversible error by granting the Dukases' motion for reconsideration and setting aside the judgment against them. Because I reach this result through somewhat different reasoning than the majority, I concur separately.

As the majority states, neither the parties nor the district court made clear under which provision of Rule 60(b) of the Federal Rules of Civil Procedure the Dukases brought the "Motion to Set Aside the Order Renewing Judgment." Like the majority, I do not doubt that the district court acted pursuant to Rule 60(b)(6). Unlike the majority, however, I think that because the particular provision that ultimately governs the Dukases' motion will determine the standard of review and the substantive legal rules for application in this appeal, the parties' failure to argue whether the district court improperly used Rule 60(b)(6) cannot simply be ignored. In fact, the majority's failure to examine this question leads to the incongruous result that, although this court normally reviews a district court's grant of a motion to reconsider under Rule 60(b) for abuse of discretion, the majority proceeds directly to a de novo review of the merits of the litigation. Such a course invites this court and litigants to overlook the procedural posture in which cases present themselves for appellate review, subjects judgments of the district court entitled to deference to inappropriately exacting scrutiny, and runs counter to the accepted principle that a Rule 60(b) motion does not bring the underlying judgment up for review. *Hood v. Hood*, 59 F.3d 40, 42 (6th Cir. 1995) (per curiam) (citations omitted).

The majority could readily avoid the unusual course of reviewing de novo a question normally committed to the sound discretion of the district court by simply recognizing the Dukases' motion for what it is: a motion under Rule

litigation. Calculated from that later date, Jalapeno argues that the FDIC's motion to renew must be considered timely under Tennessee law.

Jalapeno grounds its argument in the language of Fed. R. Civ. P. 54(b), which governs judgment upon multiple claims or involving multiple parties. The Rule provides:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

FED. R. CIV. P. 54(b). Rule 54(a) states that a judgment "includes a decree and any order from which an appeal lies." FED. R. CIV. P. 54(a). Jalapeno argues that the September 15, 1987 order could not have been a final appealable judgment because when multiple parties are involved and a court's order does not resolve all of the parties' claims, "the court may direct the entry of a final judgment as to one or more but fewer than all of the . . . parties *only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.*" FED. R. CIV. P. 54(b) (emphasis added). In this case, the district court's September 15, 1987 order did not resolve the litigation as to all parties; it ordered judgment only against the Dukases, but did not terminate the litigation as to plaintiff's claims against Tennesseans for Tyree, Tyree, or Morrison. The district

court's order also failed to comply with Rule 54(b), in that it lacked a certification of finality and it failed to find that there was no just reason for delay. Therefore, according to Jalapeno, the September 15, 1987 judgment as to the Dukases was not a final judgment for purposes of appeal.

The district court rejected Jalapeno's argument, relying upon *King Instrument Corp. v. Otari Corp.*, 814 F.2d 1560 (Fed. Cir. 1987), for the principle that Rule 54(b) has no application after a claim has been heard on appeal. According to the district court, "Rule 54(b) does not apply since the Rule concerns the power of the trial court before appeal and the Court of Appeals had already reviewed the original decision in this case." J.A. at 110.

In *King*, the Federal Circuit permitted Otari, the defendant, to appeal the district court's entry of judgment, without Rule 54(b) certification, for partial damages for the plaintiff. The Federal Circuit had, in a prior appeal, affirmed one award for damages for the plaintiff but had reversed and remanded a related damages award. On remand, the district court entered and executed the portion of the damages award which had been affirmed; continued an injunction; but did not resolve the plaintiff's remaining claim for damages. Addressing the question whether it had jurisdiction to entertain Otari's second appeal prior to the district court's disposition of the remaining damages claim, the Federal Circuit determined that jurisdiction was proper under both 28 U.S.C. § 1292(a),[6] because the district court's order continued an injunction, and 28 U.S.C. § 1291.[7] The Federal Circuit found jurisdiction under the latter statute pursuant to the *Forgay* doctrine, which, the Federal Circuit held, allows for immediate appeal

---

[6] This statute provides that the courts of appeal shall have jurisdiction over "[i]nterlocutory orders of the district courts . . . granting, continuing . . . or refusing to dissolve or modify injunctions . . . ." 28 U.S.C. § 1292(a)(1).

[7] Under this statute, appellate courts have jurisdiction over "appeals from all final decisions of the district courts . . . ." 28 U.S.C. §1291.

applicability of a federal statute of limitations under the FDCPA. For the forgoing reasons, we **REVERSE** the judgment of the district court and **REMAND** this case for further proceedings consistent with this opinion.

designated, which adjudicates . . . the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Nothing in this language, nor in any controlling precedent we were able to uncover, encourages us to believe that the Rule is any less applicable to proceedings in the district court after the case has been heard in a first appeal than before it. Therefore, we reject the *King* court's interpretation of Rule 54(b), and hold that the Rule must be complied with during all stages of litigation in the district court, not just the period before a first appeal.

Applying this principle to the instant case, we conclude that the district court's September 15, 1987 judgment did not begin the running of the statute of limitations for purposes of appeal. The order did not adjudicate the rights and liabilities of all the parties, nor was it certified pursuant to Rule 54(b), as it could have been had the Dukases sought the appropriate certification. Therefore, the judgment did not "terminate the action as to any of the . . . parties" and the judgment was "subject to revision" by the district court until the termination of the litigation against the remaining defendants.[9] When viewed in this light, it becomes clear both that the ten-year statute of limitations did not begin to run until after this court had issued its second mandate on October 27, 1989, which concluded the litigation as to "the rights and liabilities of all the parties," and that Jalapeno's Motion to Renew was timely filed.

### III. CONCLUSION

Because we conclude that the district court improperly calculated the running of the state statute of limitations, we need not address the parties' alternative argument about the

---

[9] As noted at oral argument, the parties could have challenged the judgment on a number of grounds, including the district court's computation of interest.

from an order executing the immediate transfer of property. *See King*, 814 F.2d at 1563 (discussing *Forgay v. Conrad*, 47 U.S. (6 How.) 201, 204 (1848)). Once the *King* court determined that it had jurisdiction over the appeal, it then held that it could affirm the district court's grant of damages as to part but not all of the plaintiff's claim, despite Otari's complaint that this would violate Rule 54(b). The court, in rejecting Otari's argument, held that Rule 54(b) was inapplicable because it only "concerns the power of the trial court *before* appeal." *Id.* at 1563.

Jalapeno attempts to distinguish *King* by arguing first, that the case is not applicable because it involved multiple claims, not multiple parties as in the instant case, and second, that *King* was wrongly decided because it contravenes the express language of the Rule. We agree with Jalapeno that *King* was wrongly decided. Indeed, we decline to follow *King* because we conclude that the Federal Circuit's analysis of its jurisdiction was erroneous on several levels. First, the *King* court confused the distinction between a finding of jurisdiction under 28 U.S.C. § 1291 pursuant to the *Forgay* doctrine and the purpose of Rule 54(b). Assuming, arguendo, that the Federal Circuit correctly found jurisdiction under 28 U.S.C. § 1291 pursuant to the *Forgay* doctrine, which point we later dispute, the court had no need to consider whether the district court's order failed to comply with Rule 54(b). This is so because Rule 54(b) certification is an alternative means of conferring jurisdiction upon an appellate court under 28 U.S.C. § 1291. *See Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 438 (1956) (noting that Rule 54(b) "does not supersede any statute controlling appellate jurisdiction" and that the Rule "scrupulously recognizes the statutory requirement of a 'final decision' under § 1291 as a basic requirement for an appeal to the Court of Appeals"). Therefore, the *King* court's discussion of Rule 54(b) is arguably dicta, because, in light of its finding of jurisdiction pursuant to the *Forgay* doctrine, it was unnecessary to the court's analysis.

Although we cannot discern from the *King* court's opinion whether the case involved an appeal from a partial award of damages for a single claim, as opposed to an appeal from the disposition of one of many claims, we note that if the case involved the former procedural posture, then Rule 54(b) would be completely inapplicable to the court's jurisdictional analysis, as the Rule does not apply to single-claim two-party litigation. Because we suspect that the original litigation in *King Instruments* involved a single claim for patent infringement which had been partially adjudicated, we believe that on this basis also, the Federal Circuit improperly invoked Rule 54(b).[8]

Whether or not the Federal Circuit's discussion of Rule 54(b) was dicta, we believe that its analysis is unsupportable by the language of the Rule and runs contrary to the Rule's manifold purposes. As to the latter point, Rule 54(b) permits "immediate review of certain district court orders prior to the ultimate disposition of a case." *Gen. Acquisition, Inc. v. GenCorp., Inc.*, 23 F.3d 1022, 1026 (6th Cir. 1994). It is designed to strike a balance between the undesirability of piecemeal appeals, with their attendant delay and duplication

---

[8] We note that the Federal Circuit's assumption that it had jurisdiction under the *Forgay* doctrine was also, in our mind, error. The *Forgay* doctrine is a narrow exception to the finality of judgment rule; it allows immediate appellate court review of district court orders which adjudicate part of one claim by directing the immediate delivery of property from one party to another, when there is the possibility that the losing party will experience irreparable harm if appeal of the execution is not allowed. *See Forgay*, 47 U.S. at 204; *see also* 15A WRIGHT, MILLER, & COOPER, FEDERAL PRACTICE & PROCEDURE (1992) § 3910 at 328 (noting that *Forgay* doctrine "is likely to be applied only to orders that improvidently direct immediate execution of judgments that involve part of the merits of a claim and are outside the limits of Rule 54(b)"). The "irreparable harm" factor is crucial to the ancient *Forgay* doctrine, but the *King* court nowhere makes a finding that Otari would experience irreparable harm if money damages were conveyed from it to the plaintiff. Indeed, in most situations, the transfer of money is unlikely to create irreparable harm, for money can usually be returned if improvidently given. Without a finding of irreparable harm, we believe the Federal Circuit improperly found jurisdiction under the "narrow" *Forgay* doctrine.

of appellate review, and the need to make the appellate process available in multi-claim or multi-party litigation to serve the best interests of the parties. *See Good v. Ohio Edison Co.*, 104 F.3d 93, 95 (6th Cir. 1997); *Gen. Acquisition, Inc.*, 23 F.3d at 1027. Rule 54(b) also eliminates doubt about when a party must file an appeal. *See* 10 WRIGHT, MILLER, & KANE, FEDERAL PRACTICE & PROCEDURE (1998) § 2654 at 37-38 ("If the court does not enter a Rule 54(b) order, the litigant knows that waiting until the disposition of the entire case before seeking an appeal will not lose the right to have the order reviewed."). By creating easy-to-follow guidelines, parties can be certain of the timing of their appeals and will refrain from unnecessary filings in the appellate courts. Indeed, to facilitate Rule 54(b)'s purposes, we require strict compliance with the rule. *See Gen. Acquisition, Inc.*, 23 F.3d at 1026 (stating that for Rule 54(b) certification, district court must expressly "direct the entry of final judgment as to one or more but few than all the claims or parties," "must express[ly] determin[e] that there is no just reason to delay appellate review," and must provide reasoning to support its conclusions) (internal quotation marks omitted); *Knafel v. Pepsi Cola Bottlers of Akron, Inc.*, 850 F.2d 1155, 1159 (6th Cir. 1988) (rejecting district court's Rule 54(b) certification because court failed to consider properly the factors relevant to the certification decision).

Neither of the purposes of the Rule — to balance judicial efficiency with the parties' interests and to eliminate confusion over the timing of appeals — are diminished by the circumstance that a case has already been heard once on appeal. Indeed, in complex litigation, it is not improbable that the action will advance to the appellate stage more than once. In such circumstances, as in the instant case, strict compliance with Rule 54(b) is essential for ease of administration both for the courts and for the parties.

Not only, therefore, does the *King* court's rule conflict with Rule 54(b)'s aims, but it also conflicts with its language. Rule 54(b) clearly states that "[i]n the absence of such [certification], any order or other form of decision, however