12  *General Star Nat'l Ins.*
*Co. v. Astra, et al.*                    No. 01-3002

addressed in 28 U.S.C. § 1608(e). Instead, the statute provides that a copy of a default judgment entered against a foreign state "shall be sent to the foreign state . . . in the manner prescribed for service in this section." 28 U.S.C. § 1608(e).

Astra has never denied receiving a copy of the default judgment in accordance with § 1608(e). Moreover, even if Astra did not receive a copy of the default judgment, the judgment is not automatically void, but only voidable upon proof of no actual notice. *Antoine*, 66 F.3d at 109 ("We hold that such a default judgment [entered without compliance with § 1608(e)] is voidable rather than void because the requirement of service is a condition subsequent to the entry of the judgment."). Astra does not attempt to make any such showing.

Based on all of the above, we believe that the district court correctly determined that it had subject matter jurisdiction over the present case and that Astra received proper service of process. As a result, the default judgment entered against Astra is not void. We thus conclude that the district court did not err in denying Astra's motion to vacate the default judgment.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0164P (6th Cir.)
File Name: 02a0164p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

GENERAL STAR NATIONAL
INSURANCE COMPANY, f/k/a
MONARCH INSURANCE
COMPANY OF OHIO,                    No. 01-3002
          *Plaintiff-Appellee,*


          *v.*


ADMINISTRATIA
ASIGURARILOR DE STAT;
CAROM, S.A.; ASIGURAREA
ROMANEASCA, S.A.,
                    *Defendants,*


ASTRA, S.A.,
          *Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 98-01051—George C. Smith, District Judge.

Argued: March 21, 2002

Decided and Filed: May 7, 2002

Before: NORRIS, SILER, and GILMAN, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** David A. Kopech, ELLIS, VENABLE & BUSAM, Columbus, Ohio, for Appellant. Daniel Joseph Neppl, MICHAEL, BEST & FRIEDRICH, Chicago, Illinois, for Appellee. **ON BRIEF:** David A. Kopech, ELLIS, VENABLE & BUSAM, Columbus, Ohio, for Appellant. Daniel Joseph Neppl, MICHAEL, BEST & FRIEDRICH, Chicago, Illinois, Kevin P. Foley, REMINGER & REMINGER, Columbus, Ohio, for Appellee.

_____

**OPINION**
_____

RONALD LEE GILMAN, Circuit Judge. General Star National Insurance Company (General Star), an Ohio corporation, brought suit in federal district court against Astra, S.A. (Astra), a Romanian state-owned insurance company, asserting claims for breach of contract and unjust enrichment. Astra failed to respond to the complaint. General Star then moved for a default judgment, which the district court granted. Nearly one year later, Astra filed a motion to vacate the default judgment, which the district court denied. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

**I. BACKGROUND**

Between 1974 and 1981, General Star entered into five reinsurance contracts with Administratia Asigurarilor de Stat (ADAS), which was then a state-owned insurance company responsible for providing all insurance services in Romania. The contracts provided that General Star would remit a portion of its premiums from certain insurance policies to ADAS. In return, ADAS agreed to assume a proportionate

Each of the reinsurance contracts in question contains a provision wherein ADAS agreed to accept service of process through the New York law firm Mendes and Mount. General Star therefore sent a copy of the summons and complaint via certified mail, return receipt requested, to Mendes and Mount at the address listed in the reinsurance contracts.

The district court held that the service-of-process provision in the reinsurance contracts was a "special arrangement" for the purposes of § 1608(b)(1). In addition, relying upon an affidavit submitted by General Star's counsel, the court found that General Star had complied with the terms of the provision. Finally, the court determined that Astra, as the successor-in-interest to ADAS for the purposes of the reinsurance contracts, was bound by the contractual provision.

Astra does not dispute that the service-of-process provision in the contracts is a "special arrangement" for the purposes of § 1608(b)(1). Nor does Astra contend that General Star failed to comply with the contracts' service provision. Instead, Astra maintains that the district court erred in determining that it is a successor-in-interest to ADAS, thus making it subject to the terms contained in the reinsurance contracts between ADAS and General Star. For the reasons set forth above, however, we have concluded that the district court correctly determined that Astra is the successor-in-interest to ADAS for the purposes of the reinsurance contracts. Astra is therefore subject to the service-of-process provision in those contracts.

As an alternative argument, Astra contends that General Star "failed to abide by the service of process provisions of . . . Section 1608(e)." But Astra makes this contention without any further discussion or citation to authority. Such a conclusory argument is waived on appeal. *E.g., United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) (holding that "perfunctory and undeveloped arguments . . . are waived [on appeal]"). In any event, the proper manner of effecting service of process upon a foreign state is not

compelling.  Furthermore, federal law in the United States is " well settled" that a judgment remains binding until set aside on appeal.  *Rice v. Dep't of Treasury*, 998 F.2d 997, 999 (Fed. Cir. 1993) (recognizing this principle and holding that a trial court's resolution of an issue may have preclusive effect in subsequent litigation even while an appeal of that court's judgment is pending).  Astra cites no authority indicating that the converse is true under English law.

We therefore adopt the reasoning contained in the above-cited decisions of the High Court of Justice, and conclude that the district court did not err in determining that Astra is the successor-in-interest to ADAS for the purposes of the reinsurance contracts at issue in this case.  As a successor-in-interest to ADAS, Astra is bound by ADAS's surrender of its sovereign immunity pursuant to §§ 1605(a)(1) and (2).  The district court thus had subject matter jurisdiction over the present case.

## B.    Service of process

We next address Astra's argument that the default judgment is void because of General Star's alleged failure to properly effect service of process.  This court has held that a judgment "is void under 60(b)(4) if the court that rendered it . . . acted in a manner inconsistent with due process of law." *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 108 (6th Cir. 1995) (internal quotation marks omitted).

General Star sought to effect service of process pursuant to 28 U.S.C. § 1608(b)(1), which provides as follows:

(b) Service in the courts of the United States and of the States shall be made upon an agency or instrumentality of a foreign state:
> (1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality . . . .

share of any losses that General Star incurred on these policies.

General Star and ADAS maintained their business relationship until 1991, when ADAS was dissolved by a Romanian governmental decree.  The decree was issued shortly after democratic reformers overthrew the communist regime that had governed Romania for nearly 50 years.  Three companies were created by the new Romanian government to take over ADAS's insurance operations.  One of these companies, Astra, was ordered to assume ADAS's international and reinsurance interests.  The two other companies, Carom, S.A. (Carom), and Asigurarea Romaneasca (Asirom), assumed responsibility for ADAS's remaining insurance endeavors.

General Star alleges that it began having difficulty collecting the monies due under the reinsurance contracts at approximately the same time that ADAS was dissolved.  On October 14, 1998, General Star filed suit against ADAS, Astra, Carom, and Asirom in the United States District Court for the Southern District of Ohio, asserting claims for breach of contract and unjust enrichment.  The complaint sought recovery of $922,107 in past due payments and $1,618,994 in additional expenses.

General Star sought to notify the defendants of this suit in two ways.  First, two days after filing the complaint, General Star faxed a copy to Astra.  Then, on November 23, 1998, General Star had a copy of the summons and complaint delivered to Mendes and Mount, a New York law firm designated in the reinsurance contracts as ADAS's agent for receiving service.

The defendants, however, failed to file any response to General Star's complaint in the weeks following Mendes and Mount's receipt of the documents.  Approximately two months after the complaint was filed, General Star moved the district court for a default judgment, pointing out that the

defendants had failed to file a response within 20 days of receiving service of process as required by Rule 12(a)(1)(A) of the Federal Rules of Civil Procedure. The district court agreed, and therefore entered a default judgment against the defendants on March 17, 1999.

Almost one year later, on March 16, 2000, the defendants filed a motion to vacate the default judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. They claimed that the default judgment was void because of an alleged lack of subject matter jurisdiction and improper service of process. The district court agreed that the judgment was void as to Carom and Asirom, neither of which is ADAS's successor-in-interest for the purposes of the reinsurance contracts at issue. But the court determined that the judgment was valid as to Astra, which it concluded is the successor to ADAS with regard to the reinsurance contracts. This timely appeal followed.

## II. ANALYSIS

Astra maintains that the district court erred in denying its motion to vacate the default judgment. This motion was brought pursuant to Rule 60(b)(4) of the Federal Rules of Civil Procedure, which provides that a court may grant relief from a judgment that is void. We review de novo a district court's denial of a Rule 60(b)(4) motion. *Jalapeno Prop. Mgmt., LLC v. Dukas*, 265 F.3d 506, 515 (6th Cir. 2001).

### A. Subject matter jurisdiction

Our analysis begins with Astra's contention that the district court lacked subject matter jurisdiction over the present case, thereby rendering the default judgment void. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 108 (6th Cir. 1995) ("A judgment is void under 60(b)(4) if the court that rendered it lacked jurisdiction of the subject matter . . . .") (internal quotation marks omitted). The district court based its exercise of subject matter jurisdiction on 28 U.S.C. § 1330(a), which

"ASTRA, S.A." shall take over the assets pertaining to ADAS joint venture companies abroad, those pertaining to the international insurance and reinsurance activities, amounting to lei 3,500 million and, up to their limits, the related liabilities.

Astra argued before the High Court of Justice that this decree limits its liability arising from ADAS's reinsurance activities to "lei 3,500 million," an amount that was exhausted shortly after Astra came into existence. The Romanian legal expert, who served as the president of the Romanian Constitutional Court, disagreed. He stated that the decree was issued to carry out a law that required the transfer of ADAS's operations to newly established units. Because the law made no mention of eliminating ADAS's liabilities, the expert concluded that the phrase "amounting to lei 3,500 million" in the decree is not a cap on the liabilities Astra inherited from ADAS, but simply an erroneous estimate of ADAS's total international and reinsurance liabilities. Crediting this testimony, the High Court of Justice concluded that Astra is the successor-in-interest to ADAS for all of the latter's reinsurance liabilities.

The High Court of Justice reached the same conclusion in *In re Astra*. In that case, Astra again contended that it is not a full successor-in-interest to ADAS, but rather assumed only "lei 3,500 million" of ADAS's liabilities. The court rejected this position, pointing out the absence of any evidence indicating that the Romanian government intended to cancel or limit ADAS's liabilities in transferring its reinsurance operations to Astra.

Astra provides no reasoned basis for discounting the persuasive analysis set forth in these two decisions, which apparently represent the only judicial pronouncements as to whether Astra is a successor-in-interest to ADAS under Romanian law. Although Astra contends that we should give no weight to these decisions because they are currently being appealed, this fact does not make their analysis any less

The Romanian courts have yet to decide whether Astra is a successor-in-interest to ADAS.  Astra argues that this precludes us from resolving the successorship issue.  We disagree.  The lack of controlling authority does not end our inquiry, but instead requires us to determine independently whether Astra is a successor-in-interest to ADAS under Romanian law. *Cf. Overstreet v. Norden Labs., Inc.*, 669 F.2d 1286, 1289-90 (6th Cir. 1982) (holding that a federal court sitting in diversity must, absent controlling precedent, decide unsettled issues of state law as if it were a state court).  In analyzing Romanian law, we "may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."  Fed. R. Civ. P. 44.1 (describing the sources a court may consider in determining matters of foreign law).

Astra claims that it is not a successor-in-interest to ADAS, but offers no analysis of the issue under Romanian law.  General Star, on the other hand, urges us to rely upon two judicial decisions from the United Kingdom where the court applied Romanian law in assessing the relationship between Astra and ADAS.  These cases are *Astra S.A. Ins. and Reinsurance Co. v. The Yasuda Fire & Marine Ins. Co. of Europe Ltd.*, 1997 Folio Nos. 926, 1031, High Court of Justice, Queen's Bench Division, Commercial Court, United Kingdom (1999), and *In re Astra S.A. Ins. and Reinsurance Co., et al.*, 1999 Folio No. 728, High Court of Justice, Queen's Bench Division, Commercial Court, United Kingdom (2000).

In *Yasuda*, the High Court of Justice determined that, pursuant to Romanian law, Astra is the successor-in-interest to ADAS with regard to the latter's reinsurance liabilities.  To reach this conclusion, the court relied upon the opinion of a Romanian legal expert pertaining to the proper meaning of the government decree that transferred ADAS's reinsurance interests to Astra.  This decree states in pertinent part as follows:

---

governs the jurisdiction of the federal district courts in actions against a foreign state.  Section 1330(a) provides as follows:

> The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement.

Astra concedes that, as an agency of the Romanian government, it is a "foreign state" for the purposes of § 1330(a), and that this section therefore governs whether the district court had subject matter jurisdiction over the present case.  But Astra argues that the district court misapplied § 1330(a).  Specifically, Astra maintains that the district court erroneously concluded that Astra was not entitled to immunity pursuant to 28 U.S.C. §§ 1605(a)(1) and (2).

Section 1605(a)(1) provides that a foreign state is not entitled to sovereign immunity if it either expressly or implicitly waives that immunity.  The district court held that ADAS implicitly waived its sovereign immunity when it agreed in the reinsurance contracts "to submit to the jurisdiction of any court of competent jurisdiction of the United States."  Because the court determined that Astra is a successor-in-interest to ADAS, it concluded that Astra is bound by ADAS's implicit waiver of sovereign immunity.

Section 1605(a)(2) provides that a foreign state lacks sovereign immunity in any suit that "is based upon a commercial activity carried on in the United States by the foreign state . . . ."  The district court reasoned that each reinsurance contract between General Star and ADAS is a commercial transaction within the United States, such that ADAS would have no immunity in the present case. Again, having decided that Astra is a successor-in-interest to ADAS,

the court determined that § 1605(a)(2) provides an alternative basis for concluding that Astra lacks sovereign immunity.

Astra also contends that the district court lacked subject matter jurisdiction because each of the reinsurance contracts contains a clause requiring the parties to submit any disputes arising under the contract to mandatory arbitration. It therefore maintains that the issue of whether it is a successor-in-interest to ADAS may be resolved only through the arbitration process.

But "[a]n agreement to arbitrate may be waived by the actions of a party which are completely inconsistent with any reliance thereon." *Germany v. River Terminal Ry. Co.*, 477 F.2d 546, 547 (6th Cir. 1973) (per curiam). Although a waiver of the right to arbitration is "not to be lightly inferred," *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001) (internal quotation marks omitted), a party may waive the right by delaying its assertion to such an extent that the opposing party incurs actual prejudice. *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 131 (2d Cir. 1997) (recognizing that a party waives the right to arbitrate where it delays the invocation of that right to the extent that the opposing party incurs "unnecessary delay or expense") (internal quotation marks omitted).

In the present case, Astra did not assert its purported right to arbitrate until it filed its motion to vacate the default judgment on March 16, 2000. General Star gave Astra actual notice of the lawsuit on October 16, 1998. Thus, for 17 months, Astra remained idle while General Star incurred the costs associated with this action. Astra, moreover, sought arbitration only *after* the district court had entered a default judgment against it. Under these circumstances, we believe that Astra has waived its right to arbitrate. *Menorah Ins. Co. v. INX Reinsurance Corp.*, 72 F.3d 218, 222 (1st Cir. 1995) (concluding that the defendant waived its right to arbitrate where it "chose not to invoke arbitration from July 1992 until October 1993 and [the plaintiff] bore the costs of proceeding

to try to obtain the sums it thought owed"); *Stone v. E.F. Hutton & Co.*, 898 F.2d 1542, 1543 (11th Cir. 1990) (per curiam) (holding that the defendant waived its right to arbitrate where it delayed its assertion of that right for 20 months).

Astra further maintains that even if the district court had the authority to resolve whether Astra was a successor-in-interest to ADAS, the court erred in resolving the merits of the issue. It points out that ADAS was created by the former communist regime in Romania, while Astra is a product of the new democratic government. Astra thus claims that "it is not an instrumentality of the same foreign state as ADAS . . . ." This leads Astra to conclude that it is not a successor-in-interest to ADAS and that it therefore did not waive its sovereign immunity based upon ADAS's contractual arrangements.

To evaluate Astra's argument, we must first consider the controlling law to be applied in deciding whether Astra is a successor-in-interest to ADAS. Astra claims that we must apply Romanian law in resolving this issue, but cites no authority for its argument. General Star contends, on the other hand, that international law controls whether Astra is a successor-in-interest to ADAS, citing *First National City Bank v. Banco Para El Comercio*, 462 U.S. 611 (1983). The Supreme Court in *First National City Bank*, however, did not consider the type of successorship question presented in this case. Instead, the Court determined that international law governed whether a Cuban national bank could be held liable in an American court for actions taken by the Cuban government. *Id* at 613.

Neither party, therefore, provides any direct authority as to the controlling law to be applied in evaluating the relationship between Astra and ADAS. Even if we accept Astra's position and apply Romanian law, however, the analysis set forth below shows that Astra is nevertheless a successor-in-interest to ADAS. We thus need not resolve the choice-of-law issue.