# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 28, 2007

Charles R. Fulbruge III
Clerk

No. 06-10912

SOBRANES RECOVERY POOL I, LLC, a Delaware Limited Liability
Company, as successor-in-interest to FEDERAL DEPOSIT INSURANCE
CORPORATION, as Manager of FSLIC Resolution Fund in its Corporate
Capacity

Plaintiff-Appellant

v.

TODD & HUGHES CONSTRUCTION CORP.;
J. RANDALL HUGHES

Defendants-Appellees

Appeal from the United States District Court
for the Northern District of Texas

Before HIGGINBOTHAM, SMITH, and OWEN, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Sobranes Recovery Pool I, LLC (Sobranes), as private-party assignee of the Federal Deposit Insurance Company (FDIC), sought to execute on a judgment entered against Todd & Hughes Construction Company (THCC) and J. Randall Hughes (collectively, Defendants) in favor of the FDIC under the Federal Debt Collection Procedures Act (FDCPA).[1] The district court held that Sobranes could not invoke the FDCPA. We affirm, although on grounds different from those relied on by the district court.

---

[1] 28 U.S.C. § 3001 et seq.

I

In June 1984, THCC executed an "All Inclusive Deed of Trust Note" (the Note) in favor of Western Savings Association for $10.3 million. The Note matured on June 8, 1985. In June 1985, THCC executed an "Extension of Real Estate Note and Lien," renewing the Note and extending the maturity date to July 31, 1985. When THCC renewed the Note, Hughes, Gordon Todd, and Thomas Todd each guaranteed the Note. In July 1985, THCC, Western Savings Association, and BBC Olympic agreed to an "Assumption and Consent Agreement and Modification of Real Estate Note and Lien," under which BBC Olympic assumed without recourse the Note and obligations of THCC. The assumption note was to mature on June 1, 1987.

However, in September 1986, Western Savings Association was placed into receivership and its assets – including the notes and guarantees involved here – were transferred by the Federal Savings and Loan Insurance Corporation (FSLIC) to Western Federal Savings and Loan Association (Western Federal). Then, in August 1988, Western Federal was placed into receivership, and its assets – again including the notes and guarantees involved here – were transferred to Sunbelt Savings, FSB, by the FSLIC. Sunbelt Savings transferred the notes and guarantees back to the FSLIC in December 1988. THCC and the guarantors defaulted on their obligations under the notes and guarantees.

In August 1989, Congress abolished the FSLIC and appointed the FDIC as Manager of the FSLIC Resolution Fund.[2] The FDIC thus came into possession of the notes and guarantees, and in August 1991, the FDIC brought suit against THCC, T. Todd, G. Todd, and Hughes to recover on the note and guarantees. The FDIC filed an amended complaint in March 1992, adding Todd & Todd Development Company as a defendant and asserting additional claims

---

[2] See Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183.

against T. Todd, G. Todd, and Hughes, in order to recover on another promissory note and guarantee agreements.[3] The district court entered judgment in favor of the FDIC in October 1992, and an abstract of judgment was filed in January 1993.

The FDIC did not execute on the judgment itself, but rather assigned the judgment to RecoverEdge, LP. RecoverEdge then assigned the judgment to Lawyers' Recovery & Litigation Services, Inc. On October 28, 2004, Lawyers' Recovery assigned the judgment to Sobranes; the district court received notice of the assignment on January 31, 2005. During the series of assignments, a writ of execution issued in April 2003.

On July 1, 2005, Sobranes, turning to enforcement of the judgment, filed a motion requesting declaratory judgment, appointment of a receiver, or an accounting. Sobranes sought a declaration that assets held by Hughes' wife, Melanie Hughes, pursuant to an agreement "Partitioning Community Property,"[4] were subject to execution to satisfy the judgment. It also sought to have the successor entities to THCC placed in receivership, and in the alternative requested an accounting of assets held by Hughes, his wife, and the successor entities. Mrs. Hughes and the successor entities were not parties to the FDIC's judgment.

Mrs. Hughes and the successor companies argued, inter alia, that even though a writ of execution issued in April 2003, it came too late as Texas law required the writ to issue within ten years from entry of judgment to prevent it

---

[3] In this appeal, Sobranes has made no mention of the note and guarantee agreements that led the FDIC to amend its complaint in March 1992. To the extent Sobranes has any separate arguments regarding the later note and guarantee agreements, Sobranes abandoned those arguments. See Cinel v. Connick, 15 F.3d 1338, 1345 (5th Cir. 1994) ("An appellant abandons all issues not raised and argued in its initial brief on appeal. . . . A party who inadequately briefs an issue is considered to have abandoned the claim.").

[4] Hughes and his wife executed the partition agreement in July 1988. The partition agreement implicated the ownership of the successor companies to THCC.

from going dormant, and that Sobranes could not invoke the FDCPA to evade the state time-bar. Sobranes countered that execution of the judgment in the hands of the FDIC would face no limitations period under the FDCPA, and as the FDIC's assignee, it should have the same benefit. The district court referred the requests to a magistrate judge.

The magistrate recommended denying Sobranes' motion, concluding that the judgment is not a "debt" under the FDCPA because the underlying notes and guarantees were between private parties; that under Federal Rule of Civil Procedure 69(a), state law governed the time limits on execution, and execution was time-barred under Texas law because no writ of execution issued within ten years of the entry of judgment and there were no grounds for revival.

The district court agreed with the recommended denial of relief, but on different grounds. The court explained that "Sobranes has not identified (and the court has not located) any instance where a private party such as Sobranes, as assignee or otherwise, has been held to be entitled to recover judgment on a debt, or otherwise to assert rights or benefits under the FDCPA." Rather, the court concluded that the case law indicated that the United States was the "proper party to invoke the benefits of the FDCPA." The court thus "adopt[ed] the magistrate judge's recommendation to deny Sobranes' motion . . . on the limited ground that Sobranes has failed to demonstrate that it is a proper party to invoke FDCPA and that it therefore cannot rely on the FDCPA to establish that the judgment is not dormant under Texas law." Sobranes appeals.

## II

Before turning to the merits, we address three preliminary issues.

## A

Although neither party questions our jurisdiction, we have an independent duty to consider it, and given the unusual procedural history of this case, we

pause on the issue.[5]  28 U.S.C. § 1291 gives this court jurisdiction to review "final decisions" of the district courts.  "A final decision generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."[6]

Sobranes' brief and reply brief are in great – if not complete – tension over whether the district court's order is a final decision.  In its statement of jurisdiction, Sobranes writes, "The parties in the underlying post-judgment proceeding agreed, and the trial court agreed, that 'the judgment is dormant if Texas law applies, and it is not dormant if the FDCPA controls.'"  Thus, Sobranes explains, because the judgment is dormant under Texas law, the district court's ruling that the FDCPA is inapplicable is dispositive.  In its reply brief, Sobranes comes about face, arguing that the issue of dormancy was never decided below, the issue of dormancy is not before this court, and this court should remand on the issue.  But if this be so, then this court is without jurisdiction because the district court never reached the dispositive issue remaining in the case.  Rather, the district court only made an antecedent ruling on the applicable law, and the applicability of the FDCPA is not "effectively unreviewable on appeal from a final judgment."[7]

A close reading of the district court's ruling, the magistrate's recommendation and report, and the parties' filings persuade us that the district court did rule that the judgment is dormant under Texas law.

In recommending that Sobranes' motion be denied, the magistrate specifically considered whether the judgment is dormant, concluding that it is.

---

[5] See Mosley v. Cozby, 813 F.2d 659, 660 (5th Cir. 1987).

[6] McLaughlin v. Miss. Power Co., 376 F.3d 344, 350 (5th Cir. 2004) (quoting Catlin v. United States, 324 U.S. 229, 233 (1945)) (internal quotations omitted).

[7] See Goodman v. Harris County, 443 F.3d 464, 468 (5th Cir. 2006) (listing the collateral source doctrine's elements).

Thus, the magistrate's decision squarely placed the issue before the district court – and Sobranes' objections to the magistrate's decision explicitly made the argument that the judgment is not dormant because of the FDCPA.

Before analyzing the applicability of the FDCPA, the district court framed the issue before it as "Sobranes' objection to the magistrate judge's conclusion that the judgment is dormant," and noted that "the parties also agree that the judgment is dormant if Texas law applies." The district court adopted the magistrate's recommendation, concluding that "[Sobranes] therefore cannot rely on the FDCPA to establish that the judgment is not dormant under Texas law." The district court specifically limited its departure from the magistrate's recommendation to the FDCPA analysis, leaving untouched the magistrate's analysis of the dormancy issue. It is not surprising that the district court did not include a detailed analysis of whether the judgment is dormant under Texas law as the parties conceded that it is, a concession Sobranes again makes in its statement of jurisdiction in its opening brief.

As the district court in substance held that Sobranes is time-barred from executing on the judgment, its order is a final decision, and we have jurisdiction.

B

The central question is whether Sobranes is entitled to invoke the FDCPA. As this is a question of statutory interpretation, our review is de novo.[8]

---

[8] Comacho v. Tex. Workforce Comm'n, 408 F.3d 229, 234 (5th Cir. 2005). There is, arguably, some question of whether our review is for abuse of discretion. We have previously noted that under both 28 U.S.C. § 2201 and § 2202, the statutory provisions providing for declaratory relief and motions for further relief, the district court "may" grant relief, therefore limiting our review to abuse of discretion. See United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co., 414 F.3d 558, 569 (5th Cir. 2005). However, we have also recognized that, when "the denial of a motion for further relief under 28 U.S.C. § 2202 is based on a question of law, it is reviewed de novo." Id.; see also United Nat. Ins. Co. v. SST Fitness Corp., 309 F.3d 914, 916 (6th Cir. 2002) (same); Unocal Corp. v. United States, 222 F.3d 528, 544 (9th Cir. 2000) ("Because the district court's failure to issue a declaratory judgment turned on a question of statutory interpretation, this court reviews it de novo."). We have also recognized that de novo review of a district court's dismissal of a declaratory judgment action is appropriate when the court's ruling was based on ripeness, a question of law. See, e.g., Venator Group Specialty Inc.

6

C

Sobranes argues that resolving the issue of whether the judgment is a debt within the meaning of the FDCPA would not properly dispose of this appeal because the district court did not address it. It is an elementary proposition, and the supporting cases too numerous to cite, that this court may "affirm the district court's judgment on any grounds supported by the record"[9] – which we elect to do.

III

Congress passed the FDCPA "to create a comprehensive statutory framework for the collection of debts owed to the United States government."[10] Congress sought to alleviate the burden on the federal government of navigating the different collection schemes in each state and "lessen[] the effect of delinquent debts on the massive federal budget deficit now undermining the economic well-being of the Nation."[11]

Important as these concerns are, Congress did not create a statutory scheme without limit, but rather cabined the types of obligations – in the parlance of the statute, "debts" – that trigger the FDCPA. The statute "provides the exclusive civil procedures for the United States to recover a judgment on a debt."[12] The statute is specific in that it applies only to debts, as § 3001(c) makes

---

v. Matthew/Muniot Family, LLC, 322 F.3d 835, 838 (5th Cir. 2003). Similarly, in Cole v. City of Dallas, 314 F.3d 730, 731-32 (5th Cir. 2002) (per curiam), we considered a district court's denial of a preliminary injunction. Explaining that normally we would apply abuse of discretion review in such cases, we held that de novo review applied because "the specific issue relevant to this inquiry is the district court's conclusion of law related to Cole's declaratory judgment request." Thus, because the only question is one of statutory interpretation, de novo review is appropriate.

[9] Sojourner T v. Edwards, 974 F.2d 27, 30 (5th Cir. 1992).

[10] H. R. Rep. No. 101-736, at 24 (1990), as reprinted in 1990 U.S.C.C.A.N. 6630, 6631.

[11] Id.

[12] 28 U.S.C. § 3001(a)(1).

clear: "This chapter shall not apply with respect to an amount owing that is not a debt or to a claim for an amount owing that is not a debt." The statute defines a debt as

> (A) an amount that is owing to the United States on account of a direct loan, or loan insured or guaranteed, by the United States; or

> (B) an amount that is owing to the United States on account of a fee, duty, lease, rent, service, sale of real or personal property, overpayment, fine, assessment, penalty, restitution, damages, interest, tax, bail bond forfeiture, reimbursement, recovery of a cost incurred by the United States, or other source of indebtedness to the United States, but that is not owing under the terms of a contract originally entered into by only persons other than the United States . . . . [13]

Defendants argue that the judgment is not an FDCPA debt. They explain that the underlying notes were agreements between private parties that the FDIC acquired only through the failure of a private savings and loan institution. Neither the acquisition of the notes by the FDIC nor the FDIC's obtaining a judgment on the notes, they continue, created FDCPA debts.

Sobranes' briefs did not address the merits of the issue. During oral argument, Sobranes' counsel conceded that subpart (B) was not applicable, but urged that the judgment is a debt within the meaning of subpart (A). However, in its objections to the magistrate's recommendations, Sobranes argued that the judgment is a debt under subpart (B). As Sobranes explained in its objections brief,

> The text of the FDCPA is clear and unambiguous, a "debt" is an "amount owing the United States on account of . . . fine, assessment, penalty, restitution, damages, interest . . . or other source of indebtedness to the United States." As found by the [Fifth] Circuit, a judgment entered in the name of the United States is an amount owing the United States, and therefore is a "debt" subject to the provisions of the FDCPA. . . . As a judgment entered in the name of the FDIC is only owed by the judgment debtor to the FDIC . . . a

---

[13] Id. § 3002(3).

judgment entered in the name of the FDIC is an "amount owing to the United States" and is therefore a "debt" . . . .

To be clear, we address the definition of debt under both subparts (A) and (B).

The starting point of our analysis is, as always, the text of the statute itself.[14] We begin with an observation regarding the phrase "an amount that is owing to the United States on account of," a phrase which appears in both subparts. The phrase is not a freestanding definition of what constitutes a debt. If the phrase were, then there would be neither a need for a two part definition nor any of the other language that appears in either subpart. We cannot interpret a statute in such a way as to render significant portions of it a nullity.[15] Rather, the amounts owing to the United States that are qualifying debts are defined by reference to the language following the phrase as indicated by the qualifying language "on account of."

Subpart (A) contemplates two separate types of "amounts owing to the United States": those that result from direct loans by the United States and those that result from loans insured or guaranteed by the United States. The former is not implicated here as the government did not make any loans.

Nor is the latter applicable. The phrase "insured or guaranteed" by the United States indicates that the types of loans covered are those where the federal government has agreed to cover a lender's losses in the event the debtor defaults.[16] This common sense reading is supported by the definitions of "insure" and "guarantee": Black's Law Dictionary defines, in relevant part, "insure" as

---

[14] Hamilton v. United Healthcare of La., Inc., 310 F.3d 385, 391 (5th Cir. 2002).

[15] See Inhabitants of Montclair Twp. v. Ramsdell., 107 U.S. 147, 152 (1883) ("It is the duty of the court to give effect, if possible, to every clause and word of a statute, avoiding, if it may be, any construction which implies that the legislature was ignorant of the meaning of the language it employed.").

[16] See, e.g., United States v. Alphagraphics Franchising, Inc., 973 F.2d 429, 431 (5th Cir. 1992) (per curiam) (allowing the SBA to utilize the surcharge provisions of the FDCPA where the SBA initially guaranteed the loan, which was between private parties).

"[t]o secure . . . the payment of a sum of money in the event of a loss," and "guarantee" as an "assurance that a contract or legal act will be duly carried out."[17] Sobranes points to no evidence, nor have we found any, that the government insured or guaranteed the underlying loan to THCC, that this was anything but a private loan by a private institution. And, of course, the judgment entered against Defendants is not a loan at all – insured or otherwise.

Sobranes has argued that because Western Savings Association was a federally insured institution, the note fell within the ambit of loans insured or guaranteed by the United States. This, however, misreads the definition. The definition does not focus on whether the lending institution itself is federally insured, but rather focuses on whether the United States has insured or guaranteed the loan. Nor does it matter, as Sobranes has suggested, that the FDIC took possession of the note through receivership. As the holder of the note, this meant that the FDIC might bear the loss if the debtor defaulted, but it does not mean that the FDIC began to "insure or guarantee" the note; the government did not alter the terms of note and guarantee to pay anyone for losses suffered in the event the debtor defaulted.

Nor can Sobranes find succor under subpart (B) of the definition. The bulk of subpart (B) is written in broad language, capturing numerous forms of debt; indeed, the definition contains a final, catch-all provision for "other source of indebtedness to the United States." However, the final clause of the subpart contains important limiting language: "but that is not owing under the terms of a contract originally entered into by only persons other than the United States."

---

[17] The full definition of insure is "1. To secure, by payment of a premium, the payment of a sum of money in the event of a loss. 2. To issue or procure an insurance policy on or for"; and guarantee is "1. The assurance that a contract or legal act will be duly carried out. 2. GUARANTY. 3. Something given or existing as a security, such as to fulfill a future engagement or a condition subsequent. 4. One to whom a guarantee is made." Black's Law Dictionary 811, 711 (7th ed. 1999).

The most natural reading of the definition is that the final clause limits all of subpart (B) and not simply the catch-all provision.

Although under the last antecedent rule, "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows," it is not an unyielding rule.[18] There is a "grammatical corollary": when there is a serial list followed by modifying language that is set off from the last item in the list by a comma, this suggests that the modification applies to the whole list and not only the last item.[19] The parallel phrasing in the subpart confirms this reading. The list of qualifying types of debts begins with the phrase "an amount that is owing" and the limiting clause begins with the parallel language "but that is not owing." The final clause, therefore, pulls out from the definition those amounts owing to the United States that find their genesis in contracts where the United States was not an original party.

The subpart (B) limitation is directly applicable to this case: the note underlying the FDIC's judgment was originally entered into by only private parties. Thus, even though a judgment obtained by the government can fall within the scope of subpart (B), the final clause prevents the judgment here from being an FDCPA debt. The limitation does not give way because the FDIC came into possession of the note, sued to recover on it, and obtained a judgment. The judgment does not create an obligation between the debtor and holder that is independent of the note. That is, the note establishes the rights and liabilities of the parties, what is owed and to whom. A subsequent lawsuit and judgment

---

[18] Barnhart v. Thomas, 540 U.S. 20, 26 (2003).

[19] For example: "Compare the Fifth Amendment of the Constitution, which provides that no person shall 'be deprived of life, liberty, or property, without due process of law.' The comma before the phrase 'without due process of law' indicates that the phrase modifies 'life,' 'liberty,' and 'property.' This obviously follows the grammatical rule." Stepnowski v. C.I.R., 456 F.3d 320, 324 n.7 (3d Cir. 2006); see also Bingham, Ltd. v. United States, 724 F.2d 921, 926 n.3 (11th Cir. 1984); Quindlen v. Prudential Ins. Co. of Am., 482 F.2d 876, 878 (5th Cir. 1973).

enforce the terms of the note. The subpart (B) limitation captures this relationship and applies it where the United States was not a party to the underlying contract.

Other provisions of the statute support this interpretation. The scope section explains that the FDCPA provides procedures for the government "to recover a judgment on a debt,"[20] suggesting that the proper inquiry is on the source of the judgment. Similarly, a judgment is defined as "a judgment, order, or decree entered in favor of the United States in a court and arising from a civil or criminal proceeding regarding a debt."[21] Because the note underlying the judgment obtained by the FDIC falls squarely within subpart (B)'s limitation, and subpart (A) is plainly not relevant, the judgment does not qualify as an FDCPA debt.

Although we conclude that the statute's text is plain, we do note Congressman Brooks' explanation of the meaning of debt because of the striking parallel of his hypothetical to this case:

> The definition of "debt" was carefully written to make clear that the act will not apply to obligations which begin as purely private loan or contract obligations. For example, if one of our constituents goes to his neighborhood bank or thrift and takes out a business or personal loan, that transaction is between him and the bank or thrift. Unless it is a veterans' home loan or an FHA home loan or similar loan in which the Government is either the lender or the insurer or guarantor of the loan – that is, the cosigner of the loan – then these loans will not come under coverage of this act's new procedures. This is true even if the bank or thrift later fails and is taken over by Federal regulators. If the Federal Government seeks to recover these loan or contract obligations, it may do so in exactly the way it proceeded in the past; it is not eligible to use the new procedures in this act.[22]

---

[20] 28 U.S.C. § 3001(a)(1).

[21] Id. § 3002(8).

[22] 136 Cong. Rec. H13288-02, H13288 (1990) (statement of Rep. Brooks).

This hypothetical covers the factual situation here – a loan from a private bank; the bank fails and is taken over by the federal government; and the government seeks to collect on the loan. The House report accompanying the FDCPA is also consistent with our reading of the statute and Brooks' description: "'Debt' is defined broadly to include amounts owing to the United States on account of a direct loan or loan insured or guaranteed by the United States as well as other amounts originally due the United States."[23] Nor does the case law compel a different conclusion.[24]

---

[23] H. R. Rep. No. 101-736, supra, at 28. In at least two filings below, including in its brief in support of its objections to the magistrate's recommendations at page 8 ¶ 28, Sobranes altered this quotation to read "defined broadly to include amounts owing to the United States on account of a direct loan or loan insured or guaranteed by the United States as well as other amounts . . . due the United States." (emphasis Sobranes'). See also Plaintiff's Response in Opposition to Motion for Rehearing of Melanie Hughes' Motion for Protective Order, at p. 14 ¶ 38 (May 6, 2005). Compounding the offense, Sobranes credited by citation the Second Circuit for the edit. Unsurprisingly, the Second Circuit properly quoted the House report. See NLRB v. E.D.P. Med. Computer Sys., Inc., 6 F.3d 951, 954 (2d Cir. 1993). Cutting out "originally" fundamentally alters the quotation's meaning. Creative editing that is done with no plausible purpose other than to try to fool the court is deeply troubling and utterly unacceptable.

[24] Neither the parties nor the magistrate points to any cases that analyze the definition of debt on facts that parallel those here. Nor has our research uncovered any published opinions on point. Although Defendants put some stock in our decision in FDIC v. Shaid, 142 F.3d 260 (5th Cir. 1998), Shaid is not relevant. Shaid held that a judgment owned by the FDIC was dormant under Texas law; the opinion contains no analysis of the applicability of the FDCPA. We will not attempt to divine why the FDIC did or did not attempt to use the FDCPA. FDIC v. Bauman, No. Civ. 3:90-CV-0614-H, 2004 WL 1732933 (N.D. Tex. July 30, 2004), is similarly unhelpful.

However, in two unpublished lower court decision, courts have on similar facts concluded that the FDCPA was inapplicable. In Jalapeno Property Management, LLC v. Dukas, the FDIC bought a defaulted note originally entered into by private parties, obtained a judgment on the note, and then assigned the judgment to a private party. The private-party assignee attempted to invoke the FDCPA. According to the Sixth Circuit, the district court ruled that "because the original debt arose between two private parties . . . , the FDCPA's statutory exclusion for debts 'owing under the terms of a contract originally entered into by only persons other than the United States,' rendered the statute inapplicable." 265 F.3d 506, 509 (6th Cir. 2001). The Sixth Circuit did not reach this question on appeal, reversing the district court on its application of the state statute of limitations. Id. at 514.

Similarly, in United States ex rel. Small Business Administration v. Commercial Technology, Inc., the magistrate judge, according to this court, concluded that the FDCPA was not applicable because the United States was not a party to the underlying loan: "The

In United States v. Phillips, we considered whether the federal government could use the FDCPA to collect restitution owing to private individuals under the Mandatory Victims Restitution Act.[25] We held that the government could. Our decision, however, turned not on the FDCPA, but on the MVRA, which we interpreted as independently authorizing the government to use the FDCPA to collect restitution for victims:

> Our review of the statutory language and legislative history persuades us beyond peradventure, therefore, that Congress drafted the MVRA with the intent that it would allow prosecutors to utilize the FDCPA to collect restitution in favor of private victims.[26]

Sobranes points to no other provision of federal law like the MVRA that was drafted with the intent to authorize independently the use of the FDCPA in a situation like this.

In FTC v. National Business Consultants, Inc., the question before our court was whether a judgment obtained by the Federal Trade Commission (FTC) qualified as a debt.[27] The FTC had sued the defendants who were "engaged in the nation-wide sale of business franchises" under the Federal Trade Commission Act (FTCA) for material misrepresentations to potential franchisees, unsupported earnings claims, failure to provide required documentation, and failure to make required disclosures.[28] The FTC sought injunctive relief and money damages to redress losses suffered by defrauded

---

magistrate determined that the government was not entitled to relief under the FDCPA because the original promissory note between Caddo and CTI was not a 'debt' owing to the United States as defined by the federal statute because Caddo was not an instrumentality of the government." 354 F.3d 378, 382 n.4 (5th Cir. 2003). The district court adopted the magistrate's recommendation, but the government did not appeal that particular decision.

[25] 303 F.3d 548 (5th Cir. 2002).

[26] Id. at 551.

[27] 376 F.3d 317 (5th Cir. 2004).

[28] Id. at 318.

franchisees. The FTC wanted to use the FDCPA to collect on the judgment it obtained, and we held that it could.

We explained that the judgment was "an amount . . . owing to the United States," and that the judgment rendered the defendants liable only to the FTC, and not to any private individuals, for the whole judgment. The federal government was, therefore, the formal owner of the judgment. Finally, we explained that, even though the government might pay out some of the judgment to private individuals, nothing in the FDCPA required that the government be the "exclusive beneficiary of the judgment."[29]

The critical distinction between this case and National Business Consultants is that here the FDIC was seeking only to recover under the terms of a contract originally entered into by private parties, whereas in National Business Consultants the FTC was vindicating its independent statutory authority to enforce the FTCA. That is, the judgment the FTC recovered was not "owing under the terms of a contract" between private parties even if the private contracts provided the impetus for the lawsuit; rather, the amount owing to the United States existed because of the FTCA.

Sobranes finds its strongest support in the Second Circuit's decision in NLRB v. E.D.P. Medical Computer Systems, Inc. The Second Circuit held that the NLRB could use the FDCPA to enforce a backpay award under the National Labor Relations Act against an employer.[30] The employer argued that the FDCPA was inapplicable because any backpay award the government collected would flow to the individual employees. The court seized on Congressman Brooks' statement that the FDCPA was not meant to reach "purely private"

---

[29] Id. at 320.

[30] 6 F.3d at 954.

obligations.[31] Using this as an interpretive lodestar, the court gave great weight to the fact that the NLRB was the only entity statutorily authorized to enforce the award, the NLRB was acting in the public interest when it sought to enforce and collect a backpay award, and allowing the government to use the FDCPA would help to enforce federal labor laws.[32] Judge Walker dissented, however, taking the majority to task for elevating the legislative history above the plain meaning of the statute's text, and for its interpretation of the statute's purposes and its use of precedent.[33]

We think the dissent has the better of the argument.[34] While the majority opinion is rich with legislative history and purpose, its textual analysis is brief at best and spends nary a word on the limiting clause in § 3002(3)(B) – "but that is not owing under the terms of a contract originally entered into by only persons other than the United States." Looking past the text saps persuasive force from the majority's opinion. Nor is exclusive authority to enforce a judgment or award – as was initially the case here when the FDIC was the sole owner of the judgment – always determinative. As the First Circuit has noted, "Because the statute, as written, contains no language suggesting that all debts subject to exclusive federal enforcement are included within the grasp of the FDCPA, we find the position taken by the E.D.P. majority to be unsatisfactory."[35] We add that the limiting clause in § 3002(3)(B) strongly indicates that who can enforce

---

[31] Id. at 955.

[32] Id.

[33] Id. at 958-60 (Walker, J., dissenting).

[34] See United States v. Bongiorno, 106 F.3d 1027, 1038 (1st Cir. 1997) (concluding that "Judge Walker's dissent provides better guidance for us than does the majority opinion"). While we agree with the First Circuit's discussion of E.D.P. here, we have previously declined to follow Bongiorno when we held that the government may use the FDCPA to collect restitution owed under the MVRA. See Phillips, 303 F.3d at 550 n.3.

[35] Bongiorno, 106 F.3d at 1038.

a judgment is not dispositive, as the clause focuses on the parties to the original contract and not on the parties to the judgment. In any event, we do not pass on whether we would reach the same outcome as the Second Circuit on the facts it faced, but rather conclude only that the Second Circuit's analysis does not detract from our application of the FDCPA's plain meaning here.[36]

Sobranes advances a number of policy arguments for support. However attractive these policies are, they find no home in the plain language of the statute. While Congress is free to amend the statute to effectuate these policy concerns, we are not. As we hold there is no FDCPA debt, we need not address the ability of private-party assignees of the government to invoke the FDCPA or what statute of limitations the government enjoys under it.

IV

Thus, under Rule 69(a), state law governs execution on the judgment. Although Sobranes has abandoned any argument that the judgment is not dormant by failing to brief meaningfully the issue and essentially conceding the point in its opening brief,[37] it gave away nothing – the judgment is dormant under Texas law. The district court entered judgment against Defendants in October 1992 and an abstract of judgment was filed in January 1993. The only

---

[36] Nor is United States v. Golden Elevator, Inc., 868 F. Supp. 1063 (C.D. Ill. 1994), helpful to Sobranes. The SBA took possession of a note entered into between a private party and bank through an assignment. The issue before the court was whether, as a jurisdictional matter, the government had to use the FDCPA to collect on a judgment, holding that it did not. The court did not analyze the definition of the debt, stating only in passing that "the FDCPA could apply to this action." Nor do we know, for example whether the SBA guaranteed the original loan.

[37] See Cinel, 15 F.3d at 1345.

17

writ of execution to issue is dated April 3, 2003, which occurred more than ten years after the entry of judgment.[38] Revival is not available.[39]

For the foregoing reasons, we AFFIRM.

---

[38] See Tex. Civ. Prac. & Rem. Code Ann. § 34.001(a) ("If a writ of execution is not issued within 10 years after the rendition of a judgment of a court of record or a justice court, the judgment is dormant and execution may not be issued on the judgment unless it is revived.").

[39] See Tex. Civ. Prac. & Rem. Code Ann. § 31.006 ("A dormant judgment may be revived by scire facias or by an action of debt brought not later than the second anniversary of the date that the judgment becomes dormant.").