# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30768

United States Court of Appeals
Fifth Circuit

**FILED**

June 19, 2017

Lyle W. Cayce
Clerk

DOUGLAS BARNES,

> Petitioner - Appellant

v.

DARREL VANNOY, WARDEN, LOUISIANA STATE PENITENTIARY,

> Respondent - Appellee

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:07-CV-274

Before PRADO, HIGGINSON, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:*

A Louisiana jury found Douglas Barnes guilty of murdering Lance Aydell. Barnes sought postconviction review in state court, contending that prosecutors did not disclose a witness's inconsistent pretrial statement in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). After the state court rejected that claim, he raised it in his federal petition for a writ of habeas corpus. Before the district court ruled, Barnes added an additional *Brady* claim based on the State's failure to disclose a supposed benefit offered to a

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-30768

different witness for testifying at Barnes's trial.  The district court held the federal petition in abeyance while Barnes sought to exhaust his new claim in state court, where it was denied on procedural grounds.  We must decide whether the new claim can be heard and whether the state court's decision on Barnes's original claim was contrary to clearly established law under the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d)(1).

## I.

Aydell's murder was the result of a brawl between a group of young men. After the initial melee subsided, the group disbanded. But Barnes, along with Jake Ortega and David Brewer, returned after discovering that someone had slashed their car's tires.  Aydell was still at the park with two others, as he had been dizzied from the fight and needed help walking.  The boys helping Aydell later testified that at least two of the returning boys proceeded to beat Aydell, who had fallen to the ground.  Aydell later died of his injuries, and Barnes, Brewer, and Ortega were convicted for his death.

Barnes's original federal claim, which was rejected on the merits during state postconviction review, centered on newly discovered evidence that impeached the testimony given by Alan Hill.  Hill testified that Barnes fought with Aydell during the melee, and that Barnes prevented Hill from assisting Aydell.  After Barnes's conviction was final, however, he learned that the State's production of its pretrial conversation with Hill was incomplete.  The State failed to disclose a synopsis of Hill's statement to investigating officers, as well as a recording of that statement.  Barnes identified three inconsistencies between the newly-revealed statement and Hill's trial testimony: 1) Hill referred to Brewer specifically in the pretrial statement, but at trial he said that he did not know his name; 2) Hill identified Barnes, Ortega,

and Brewer as Aydell's attackers in his interview, but at trial he only mentioned Barnes and Ortega; and 3) Hill stated pretrial that as he left the park Brewer struck him through his driver side window while Ortega tried to hit him through the passenger side, but at trial he reversed their locations. Barnes claims that these contradictory statements could have been used to impeach Hill at trial and thus the nondisclosure violates *Brady* as supplemented by *Giglio v. United States*, 405 U.S. 150 (1972). He also asserts that the nondisclosure prevented him from properly questioning Hill under the Confrontation Clause.

Barnes's original federal claim was sent to the magistrate judge, who recommended that the claim be denied. Before the district court adopted or rejected that recommendation, Barnes discovered new information about another witness. Joseph Cosimini, one of the participants at the park, testified at trial that he saw two people kicking Aydell after the larger group disbanded, but he could only identify Ortega and could not tell whether Brewer or Barnes was the other attacker. Cosimini also testified that his testimony was not the result of a plea agreement he reached on an unrelated robbery charge. Cosimini now says, in an affidavit, that he was approached by one of Barnes's prosecutors after he had agreed to testify but before he took the stand. Cosimini alleges that the lawyer thanked him for his cooperation and said that she could see to it that he got a lighter sentence on the robbery charge.

Cosimini also recants his trial testimony, now saying he is certain that Barnes did not attack Aydell at any point during the night in question. Barnes does not allege that the prosecutor told Cosimini to change his testimony to implicate Barnes, and thus the recantation itself is not part of Barnes's *Brady* claim. Similar to his claims regarding the Hill evidence, Barnes asserts that

3

the State's failure to disclose the conversation is a *Brady/Giglio* violation, which also prevented Barnes from fully exercising his confrontation right.

Barnes moved to supplement his Hill claim with the Cosimini affidavit in March 2009.  Though Barnes styles these Cosimini-based claims as supplements to his original petition, he admits that they are actually new claims.  About a month after filing the motion to supplement, Barnes filed a motion to hold the petition in abeyance so that he could present the Cosimini affidavit to the state court.  The district court granted the stay and placed the federal petition in abeyance.  Barnes did not, however, file a protective amended petition prior to obtaining the stay, which would have preserved the filing date while he sought exhaustion in state court. *Rhines v. Weber*, 544 U.S. 269, 275–78 (2005).

Back in state court, the State objected to Barnes's second petition on the grounds that it was untimely, repetitive, and failed to state a claim upon which relief could be granted.  The Commissioner recommended that the state trial court consider the petition on its merits, concluding that Louisiana law allowed for successive petitions outside of the time period when the new claims were based on new evidence that could not have been discovered within the limitations period. *See* LA. CODE CRIM. PROC. arts. 930.8(A)(1). The trial court, without providing any reasons for its disagreement, rejected this recommendation and held that Barnes's allegations were untimely and successive.  Both the intermediate appellate court and state supreme court denied review.

Back in federal court after an almost five-year delay, Barnes moved to lift the stay and filed his amended petition containing the claim about the Cosimini evidence.  The State argued that the claim was untimely under AEDPA's statute of limitations and that, in any event, it was defaulted because

the state court had refused to consider it on procedural grounds. The magistrate judge concluded that the supplemental petition was untimely because the stay order did not toll the limitations period, that Barnes was not entitled to equitable tolling, and that the new claims did not relate back to the original petition. The opinion did not address procedural default. Over Barnes objection, the district court found the magistrate's recommendation to be "legally correct" and denied relief on the original and supplemental petitions. The district court did, however, grant a certificate of appealability.

## II.

We begin with Barnes's "supplemental" petition based on the Cosimini affidavit. Although the district court ruled that these new claims were time barred, we have doubts about whether the district court was correct that tolling was not warranted as the State had full notice of the Cosimini claims before the AEDPA limitations period had run. We need not address that issue, however, because the procedural default rule provides an alternative basis for affirming. [1]

Federal habeas review generally is barred when a petitioner's claim is rejected in state court on a legitimate procedural ground. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A procedural default will be given effect during federal habeas review when it was based on an independent and adequate state rule. The independence requirement is met when the state

---

[1] Although the magistrate's report did not address whether Barnes's new claims were barred by the procedural default rule, the State raised the issue in its opposition to Barnes's motion to supplement the record. The State also raised the issue in opposition to Barnes's objections to the report, though the district court did not address it in its order adopting the magistrate's recommendation. "It is an elementary proposition, and the supporting cases too numerous to cite, that this court may affirm the district court's judgment on any grounds supported by the record." *Sobranes Recovery Pool I, LLC v. Todd & Hughes Constr. Corp.*, 509 F.3d 216, 221 (5th Cir. 2007) (quoting *Sojourner T v. Edwards*, 974 F.3d 27, 30 (5th Cir. 1992)).

court clearly expresses that the judgment rests on a state procedural bar. *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997). The adequacy requirement is met when the state rule is one that "is applied evenhandedly to the vast majority of similar claims." *Id.*

Our ability to assess the adequacy of the procedural dismissal is undermined by the Louisiana court's failure to provide any analysis for its disagreement with the Commissioner's conclusion that the new-evidence exception allowed Barnes's otherwise untimely and successive petition to be considered. *See* LA. CODE CRIM. PROC. art. 930.8(A)(1). But Barnes does not challenge the state trial court's application of procedural law. *See Sones*, 61 F.3d at 416 (noting that petitioner bears the burden of showing that a state procedural rule is inadequate). In any event, as we explain below, Barnes does not succeed in proving the materiality of his *Brady* claim even if it is not procedurally defaulted.

A procedurally defaulted claim may be overcome when the petitioner shows a good reason for not complying with the state procedural rule (cause) and that the failure to bring the claim in state court harmed him (prejudice). *Coleman*, 501 U.S. at 750. For claims alleging a failure to disclose exculpatory or impeachment evidence, cause and prejudice parallel the suppression and materiality components of the alleged *Brady* violation. *Strickler v. Greene*, 527 U.S. 263, 280 (1999). This means that, in examining whether Barnes can escape the procedural default rule, we must examine the underlying merits of the *Brady* claim.

Barnes alleges that the State's failure to disclose the prosecutor's conversation with Cosimini about leniency is the reason he did not timely assert this *Brady* claim in state court. Showing interference by officials that made compliance with procedural rules impracticable is one accepted way of

6

showing cause.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  But even assuming that Barnes can show cause, he cannot show that the suppression of the Cosimini conversation prejudiced him.

Potential *Brady* evidence is prejudicial if it is material.  *Strickler*, 527 U.S. at 282.  In turn, evidence is material if it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."  *United States v. Hughes*, 230 F.3d 815, 819 (5th Cir. 2000) (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)).  Impeachment evidence is usually not material if testimony of the witness who could have been impeached was strongly corroborated by other evidence.  *United States v. Sipe*, 388 F.3d 471, 478 (5th Cir. 2004).

At trial, Cosimini testified that he saw either Brewer or Barnes kicking Aydell, but he could not be sure which one was the attacker.  Barnes argues that had he been aware that Cosimini had the incentive of obtaining leniency on his robbery charge when he testified, impeachment on that point could have undermined the statement that Barnes may have been one of Aydell's attackers.

It could also have undermined Cosimini's general credibility as he had testified there was no connection between his testimony and his treatment for the second robbery charge he faced.  We do not believe this impeachment evidence would have been powerful enough to undermine confidence in the verdict.  Cosimini's testimony was not that harmful given that he could not isolate Barnes as the one kicking Aydell.  The weakness of that testimony is revealed by comparing it to that of other witnesses, whose cumulative impact strongly implicated Barnes as one of Aydell's attackers.  Chad Babineaux's testimony is the most damning.  He confirmed at trial that he was "absolutely sure that Doug Barnes [was] one of the three individuals that [he] saw kicking

[Aydell] after [Aydell] was down and unconscious" during the fight.  Brad Fontenot also saw Barnes "stomp and kick" Aydell while he was on the ground. Heather Verdin testified that Barnes was "pretty much tearing into" Aydell. All told, seven witnesses confirmed that they saw Barnes either hit or kick Aydell the night of the fight, with multiple witnesses stating that Barnes beat Aydell while he was on the ground.[2]  (Mary Justilian)**;** (Andrew Lopez)**;** (Chad Babineaux)**;** (Brad Fontenot)**;** (Adam Reed)**;** (Heather Verdin)**;** (Alan Hill)**.** Even discounting Alan Hill's testimony—the subject of another *Brady* claim— there was substantial evidence supporting the jury's conclusion that Barnes was one of Aydell's attackers.  *Compare Hughes*, 230 F.3d at 821 (finding undisclosed evidence immaterial under *Brady* when other evidence pointed to petitioner's guilt), *with LaCaze v. Warden La. Corr. Inst. for Women*, 645 F.3d 728, 737 (5th Cir. 2011) (finding materiality when the witness to be impeached was the only direct evidence to show a critical element), *and Tassin v. Cain*, 517 F.3d 770, 780 (5th Cir. 2008) (same).

Not only was there cumulative testimony from other witnesses implicating Barnes, but Cosimini had already been impeached for changing his testimony.  On cross examination, Barnes raised Cosimini's testimony from an earlier hearing identifying Brewer as the person kicking Aydell.  The following exchange occurred:

> Q. (Barnes's Counsel): Now, just to make sure we've got the scene straight, you came into court, you took an oath to tell the truth, right?

---

[2] These witnesses were Mary Justilian, Andrew Lopez, Chad Babineaux, Brad Fontenot, Adam Reed, Heather Verdin, and Alan Hill.

No. 15-30768

A. (Cosimini): Yes, sir.

. . .

Q. And what did you testify that Douglas Barnes did in this incident? What did you say at that time when you were under oath?

A. I testified that he stood there wh . . . and [Brewer] was the one kicked him.

. . .

Q. Now, let me ask you the exact same question that [the State] asked you [at the earlier proceeding], when you were under oath. Mr. Cosimini, you personally did not see Doug Barnes hit or kick Lance Aydell, did you?

A. No, sir.

Q. You did not.

A. No, sir.

Q. And that's your story today?

A. Well, I mean, I'm not sure if it was [Barnes] or [Brewer] that had kicked him . . .

Q. Now, Mr. Cosimini, do you agree that what you just said is different than what you said to [the State] when you were under oath [at the earlier proceeding]?

A. Yes, sir.

Barnes was thus able to show at trial that Cosimini's identification of either Barnes or Brewer as the attacker backtracked from his earlier focus on Brewer. The undisclosed evidence about possible leniency for Cosimini in response to his testimony would have provided a possible motive for this inconsistency. So we do not discount that the information had some additional impeachment value. But the inconsistency identified at trial was already

powerful, so it is difficult for Barnes to show that the marginal force of the undisclosed *Giglio* material "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Hughes*, 230 F.3d at 819 (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)).

Perhaps most significantly, the quoted trial transcript also shows that Cosimini's testimony was not key in the case against Barnes. Unlike many other witnesses, he did not testify unequivocally that he had seen Barnes attack Aydell. Cosimini's equivocation also weakens the force of any impeachment on the grounds that he might have been shading his testimony to obtain leniency in his robbery case. If Cosimini was trying to help himself by implicating Barnes, he didn't do a very good job of it.

Combine the weakness of Cosimini's already-impeached testimony with the more damaging testimony of numerous other witnesses, and Barnes cannot show the prejudice needed to overcome his procedural default. *See Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997). As we have explained, this also means the claim would not be a basis for habeas relief even if it did not face this procedural impediment.

## III.

Barnes also appeals the district court's dismissal of his *Brady* claim concerning the Alan Hill testimony. This claim was exhausted and rejected in state court. Habeas cannot be granted on an exhausted state claim unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). An "unreasonable application" of law is more

than an incorrect application; the incorrect application must also be objectively unreasonable. *See Williams v. Taylor*, 529 U.S. 263, 409–11 (2000).

Hill testified that Barnes fought with Aydell during the melee, and that Barnes prevented Hill from assisting Aydell. As outlined above, Hill's trial testimony about the incident differed in some respects from what he said in his recorded pretrial statement that was not disclosed to Barnes. Barnes claims that these inconsistent statements could have been used to impeach Hill at trial. *See Giglio*, 405 U.S. at 154 (explaining that evidence favorable to the accused under *Brady* includes evidence that impeaches the credibility of a witness whose testimony is determinative of guilt or innocence).

Assuming that Barnes is correct in characterizing the undisclosed evidence as inconsistent with Hill's testimony, his *Brady* claim falls victim to one of the deficiencies of the Cosimini claim: several other witnesses testified that Barnes was one of Aydell's attackers. *See Sipe*, 388 F.3d at 478. This presents an even greater hurdle for the Hill-based *Brady* claim as the materiality inquiry for this exhausted claim is evaluated under the deferential AEDPA standard. And although there may be inconsistencies between what Hill told investigators and what he said at trial, Hill was consistent in implicating Barnes in Aydell's attack. Most of the discrepancies make Brewer—who had already been convicted by the time of Barnes's and Ortega's trial—less culpable in the trial testimony compared to what was said in the pretrial interview. We recognize that even if the inconsistencies do not focus on Barnes's role, they may still cast doubt on the witness's general credibility or the strength of his recollection. But in light of the other evidence and Hill's consistent identification of Barnes as an attacker, we cannot say that the state court's ruling that the undisclosed evidence was not material was an unreasonable application of *Brady*.

No. 15-30768

Barnes also raises a Confrontation Clause claim regarding the Hill evidence, but the failure of his *Brady* claim spells defeat for this claim as well. The Confrontation Clause is a trial right designed to ensure the opportunity for effective cross examination, not a "constitutionally compelled rule of pretrial discovery." *Pennsylvania v. Ritchie*, 480 U.S. 39, 53 (1987). Barnes does not allege that the trial judge limited, in any way, his ability to question Hill. It seems misplaced then for Barnes to bring a Confrontation Clause claim founded in an allegation of undisclosed evidence. *See United States v. Stewart*, 93 F.3d 189, 192 n.1 (5th Cir. 1996) ("We recognize that the right to cross-examine is a trial right designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination.").[3]

In any event, to warrant habeas relief on a Confrontation Clause claim, Barnes must show that the limitation on the scope of his examination "had a substantial . . . effect . . . in determining the jury's verdict." *Burbank v. Cain*, 535 F.3d 350, 358 (5th Cir. 2008). Because of the same corroborating evidence from several witnesses we cited in concluding that Hill could not establish materiality for his *Brady* claim, Barnes cannot meet this prejudice standard for a confrontation claim even if one does fit these allegations. *Contrast Wilkerson v. Cain*, 233 F.3d 886, 892 (5th Cir. 2000) (finding Confrontation Clause violation when the testimony of the witness to be impeached was the only evidence that petitioner committed the murder); *Burbank*, 535 F.3d at 358–59 (finding the same).

---

[3] It is not clear that Barnes sufficiently exhausted this claim in his state habeas proceeding. Although Barnes did assert that the undisclosed Hill statement "denied him the right to cross-examination," he did not flesh out how the nondisclosure violated his rights under the Confrontation Clause, nor did he invoke the Confrontation Clause by name. Accordingly, the State Commissioner did not address any potential claims under the Confrontation Clause in his recommendation to deny Barnes's state habeas claims. But even if he did exhaust the Confrontation Clause claim, the claim fails for the reasons given above.

No. 15-30768

\* \* \*

The judgment of the district court denying Barnes's petition is AFFIRMED.